**WHITE et al. v. HANSEN et ux.** (No. 10660.)

Court of Civil Appeals of Texas. Dallas. Nov. 2, 1929.

Rehearing Denied Nov. 30, 1929.

Chamberlain, Green & Wade, of Dallas, for appellants.

John W. Pope, of Dallas, for appellees.

JONES, C. J. Appellants, J. Neill White et al., filed an injunction suit against appellees, Harry C. Hansen and wife, in a district court of Dallas county to enjoin them from erecting and living in a small frame structure, which construction they had begun on a lot owned by them in an addition to the city of Dallas, opened up and developed by University Park Development Company. From a judgment dissolving the temporary writ of injunction theretofore granted, and denying the relief of a permanent injunction, an appeal has been duly perfected. The following is a sufficient statement to understand the questions discussed:

Appellants consist of University Park Development Company, a corporation, and 24 residents in this addition, all of whom purchased their lots from said company. The development company was originally the owner of all the land that comprises the addition, and, when the addition was divided into blocks, streets, and alleys, this company promulgated a general scheme of developing the addition so as to make it a desirable residence section, to be used exclusively for such purposes, and paved all of the streets within the addition. This scheme of development is reflected in certain restrictive covenants placed in each deed made to a purchaser of one or more lots. It appears that the only variation in the covenants in such deeds is that of the cost of the building to be constructed. The cost of the building allowed to be constructed by appellees is not less than $4,000. Some other deeds, in blocks other than the one in which appellees' lot is located, contain

a higher minimum cost. The restrictive covenants in appellees' deed are:

"1. Said premises shall be used for private residence purposes only and by white persons only, not excluding bona fide servants of any race. Said property shall not be used for business purposes of any kind whatsoever, nor for any commercial, manufacturing, or apartment house purposes.

"2. Any residence erected shall be of stone, brick, brick veneer, or stucco on hollow tile, and shall cost not less than $4,000.00.

"3. The front line of the body of any residence which may be erected on the property shall be 35 feet from the front property line and shall face the street on which the lot faces, and said house shall not be nearer than 6 feet to either side property line of grantees' property, but this provision shall not apply to porches or porte-cochères. In case of a corner lot no garage or other outhouse shall be placed nearer than 10 feet to the property line of the side street.

"4. It is further covenanted and agreed and made a part of the covenant running with said land, that upon a breach of any of the foregoing conditions and covenants, within twenty-five years from January 1, 1926, the title to said premises shall ipso facto, and immediately revert to and vest in the grantor herein, or to its successors or assigns, and it, or its successors or assigns, shall be entitled to immediate possession thereof, but such reversion shall not affect any mortgage or other lien which may in good faith be existing upon said property or any improvements thereon."

Appellees' lot is on the corner of Stanford street and Hillcrest avenue, the front of the lot being on the former street. Appellees purchased their lot in September, 1925. In July, 1929, appellees began the construction of what they describe as a garage and servants' house combined, on the rear of their lot. The location of this structure, which was designed to be a frame building, complies with the restrictive covenants pointing out where such an outbuilding may be constructed on a corner lot. Their express intention is to erect this building and live therein until they are able to finance the construction of a residence in conformity with the restrictive covenants in their deed. In their answer filed in this case, appellees declare that they knew of, and approved, the restrictive covenants in their deed, and intend to carry out such restrictive covenants to the letter and intent; that they were not attempting to violate any of these covenants in the construction of the garage and servants' house, but intended temporarily to reside in such structure until they are able to finance the building of the main residence. This answer contains the following allegations in reference to their residing in the servants' house, and when they will build the residence: "Defendants further allege the fact to be that, when said garage and servants' house is completed, they intend to move into same and to temporarily occupy said garage and servants' house until, if and when they can arrange their plans for the construction of their residence upon the front of said real estate, in compliance with and in conformity with the general scheme and plan and restrictions. * * *"

Appellee Harry C. Hansen testified, in effect, that he had plans he expected to mature for building the residence, and that he believed it would be constructed from three to six months from the completion of the garage and servants' house. Mrs. Hansen's testimony was to the effect that she could not fix the time, but that it would not be for as long a period as five years.

The trial court denied to appellants final relief of a permanent injunction. In rendering such judgment the court necessarily made the finding that appellees, in good faith, intend to comply with the restrictive covenants in their deed, and intend that only a reasonable time should elapse between their occupancy of the garage and servants' house and the construction of the residence to comply with the restrictions as to the use of their property, and cease to use the building constructed in the rear, except for the purposes allowed in the restrictions. As this finding is supported by evidence, it is made the finding of this court.

Appellants contend that a construction that would permit such a delay in the building of their residence cannot be given to the restrictive covenants; that, while appellees were allowed by such covenants to erect the building now attempted to be erected in the rear of their lot, it can only be done, either simultaneously with the construction of the residence, or following such construction, and in no event are appellees allowed, under a proper construction of said covenants, to build the contemplated house and reside therein, and then, at some undetermined future time, construct their residence. On the other hand, appellees contend that, as the restrictive covenants allow them to build the character of house they propose to construct for the ultimate purposes of its bona fide use as a garage and servants' house, and that as there is no prescribed order of construction of the residence and the garage and servants' house named in the restrictions, and no prohibition of a temporary residing in the servants' house allowed to be constructed, they have the right, under the restrictive covenants, to construct the servants' house and temporarily reside therein, provided they intend, in good faith, and within a reasonable time, to construct the main residence, and then make the use of the servants' house conform to the restrictions. This is the controversy to be determined on this appeal. Both sides have thoroughly and ably presented their respective contentions.

This court passed upon a very similar controversy in the case of Pierson et al. v. Can-

field et al., 272 S. W. 231, 234; the opinion was delivered by Associate Justice Looney. The opinion in that case, after making a statement to the effect.that the deed then under review prescribed neither time limit nor the order in which houses should be built upon the lot, nor of the cost of servant houses, then declared that: "If appellant, in good faith, erected a servant's house to be used as a residence temporarily, with the bona fide intention, within a reasonable time, of erecting the main residence on the lot in compliance with the restrictions in the deed, it would not constitute a violation of the restrictive covenants." The restrictive covenants contained in the deed under review in the reported case are not set out in full in the opinion, but we copy this description of the covenant on which the court made the above-quoted pronouncement: "This conveyance was made subject to the conditions therein set out, one of which was, that no house should be built on Woodin Boulevard in said addition that cost less than $1500.00, and providing that no house should be built on the rear end of the lot, or lots, for the purpose of rental, or for any other purposes except for servant houses, stables, etc., for the use of the occupants of the main residences."

It is shown that appellant in the reported case had built a structure (costing $800) in the rear of his premises, and was living therein. There was testimony showing that this structure was built as a .servants' house and was only to be used temporarily, when the main residence would be built and occupied. It therefore appears that, in principle, there is no difference in the reported case and in the case under review. We are of opinion that the Pierson Case, supra, is controlling in this case.

Appellants cite a number of cases attempting to show that the Pierson Case should not be considered as controlling in this case. The one nearest in point is the comparatively recent case of Plaster v. Stutzman, 8 S.W.(2d) 750, in which case, under almost similar facts as to the intention of the parties, claiming the same right that appellees claim here, the Galveston Court of Civil Appeals, under a construction of a restrictive covenant in a deed, announced a different conclusion. There is, however, to our minds a controlling difference in the restrictive covenant under review in that case and the one here under review. The covenant under review in the reported case declared that no building to be used as a dwelling should be erected, the original cost of which should be less than $2,500, and this amount should include only the cost of the residence proper and not include the cost of outhouses, etc., but, unlike the instant case, contains this significant clause: "And no building constructed for purposes other than a residence shall be used or occupied as a residence."

There is no such inhibition in any of the restrictive covenants in appellees' deed, unless it follows as a necessary implication from the other provisions of such restrictive covenants. We cannot hold in this case that there arises from the restrictions in the covenants in this deed such an implication as would prohibit appellees from temporarily residing in the servants' house until they can finance and complete their main residence, provided, of course, the residence is completed within a reasonable time. As there is no express covenant in the deed forbidding a temporary residence in the servants' house, and as no such prohibition necessarily arises from the restrictive covenants in the deed, we hold that the reported case is distinguishable, both from the case of Pierson v. Canfield, supra, and the instant case.

This case, therefore, will be affirmed, with the proviso that, if later developments disprove the good faith now given to appellees in the contemplated improvement of their lot, appellants are not prejudiced to renew this suit when, after the expiration of a reasonable time, no attempt has been made by appellees to construct the main residence.

Affirmed.