### WHITE et al. v. HANSEN et ux.
### No. 1414—5612.

Commission of Appeals of Texas, Section A.
March 4, 1931.

, Chamberlain, Green & Wade and W. A. Wade, all of Dallas, for plaintiffs in error.

John W. Pope, of Dallas, for defendants in error.

### CRITZ, J.

This is an injunction suit filed in the district court of Dallas county, Tex., by plaintiffs in error, John Neill White and twenty other property owners in University Heights, an addition to the city of Dallas, Tex., for the purpose of enjoining the defendants in error, Harry C. Hansen and wife, from erecting and living in a small frame structure on a vacant lot owned by the Hansens in such addition.

It is alleged and proved that the construction of the house in question was begun in July, 1929, and this suit was immediately filed.

It is further shown that the addition in question was opened up and developed by University Park Development Company, one of the plaintiffs, under a general scheme and plan of development of the addition so as to make it a desirable, restrictive, and exclusive residence section. In order to carry out such general scheme and plan every deed to any lot sold in the addition contained certain restrictive covenants running with the land. Those applicable to this suit read as follows:

"1. Said premises shall be used for private residence purposes only and by white persons only, not excluding bona fide servants of any race. Said property shall not be used for business purposes of any kind whatsoever, nor for any commercial, manufacturing, or apartment house purposes.

"2. Any residence erected shall be of stone, brick, brick veneer, or stucco on hollow tile, and shall cost not less than $4,000.00.

"3. The front line of the body of any residence which may be erected on the property shall be 35 feet from the front property line and shall face the street on which the lot faces, and said house shall not be nearer

than 6 feet, to either side property line of grantees property, but this provision shall not apply to porches or portecocheres. In case of a corner lot no garage or other outhouse shall be placed nearer than 10 feet to the property line of the side street.

"4. It is further covenanted and agreed and made a part of the covenant running with said land, that upon a breach of any of the foregoing conditions and covenants, within twenty-five years from January 1, 1926, the title to said premises shall ipso facto and immediately revert to and vest in the grantor herein, or to its successors or assigns, and it, or its successors or assigns, shall be entitled to immediate possession thereof, but such reversion shall not affect any mortgage or other lien which may in good faith be existing upon said property or any improvements thereon."

The lot of the Hansens was purchased in September, 1925, soon after the addition was opened, and the lots placed on the market, and the deed to it contains the above-quoted restrictive covenants. The plaintiffs in this suit are the development company, who still owns a few unsold lots, and certain other parties who purchased lots from the development company in the addition. The lot of the Hansens is on the corner of Stanford street and Hillcrest avenue, and fronts on Stanford street.

In July, 1929, the Hansens began the construction on their lot of what is described as a garage and servants' house combined. The structure is to be a four room frame building, to cost about $1,000, and to consist of a living room, bedroom, dining room and kitchen, and bath. There is a one car garage attached in such a manner that one wall of the house in question constitutes one wall of the garage. The structure is on the back of the lot.

When this suit was filed a temporary injunction was granted, but when the case was finally tried on its merits on September 29, 1929, before the court without the intervention of a jury, the permanent injunction was refused. This judgment was affirmed by the Court of Civil Appeals. 21 S.W.(2d) 1091. The case is in the Supreme Court on writ of error granted on application of J. Neill White et al.

It seems that no issue is raised as to the validity of the restrictive covenants in question.

The Court of Civil Appeals holds that the trial court committed no error in refusing the injunction here sought, because under such covenants the Hansens had a right to erect what they designated as a servants' house and garage, to be used by them as a residence temporarily, if they, in good faith, intended within a reasonable time to erect the main residence in compliance with the restrictive covenants in the deed. The Court of Civil Appeals further finds as a matter of fact that the evidence is sufficient to establish such intent. We do not agree with this holding.

The Hansens expressly pleaded that: "Your defendants further allege the fact to be that when said garage and servants' house is completed, they intend to move into same, and to temporarily occupy said garage and servants house until, if and when they can arrange their plans for the construction of their residence upon the front of said real estate, in compliance with and in conformity with the general scheme and plan and restrictions as are found in defendant's deed, and then the defendants intend to remove from said garage and servants' house, into their said residence, to be so constructed, and then to have said servants house occupied by their servants, and such help as your defendants may need about the premises, and to use said garage part of said house for the storage of their said automobile."

H. C. Hansen was sworn as a witness in his own behalf, and, among other things, testified:

"I knew that my deed provided, at the time we started this house, that the residence had to be built within 35 ft. of the front of the lot. We began the constructon of this house near the back, as close as possible, within two ft. of the property line to the alley, and about 16 ft., I think, from Hillcrest St. The servant's house and garage faces Hillcrest. We intended to move into the place when we finished for the present. We didn't intend to live in it very long, not longer than absolutely necessary, probably three months or six months, just as soon as we could make arrangements to build a house.

"I am 28 years old and work for a showcase company. It is our intention to build a home on the front of the lot. We have been married nearly a year and we are building this servant's house merely to occupy it until we can build a home in front. We intend to finance it in such a way that we can build it. I couldn't give the court the exact date as to when we will build because I don't know when it will be, but it is our plan to build in front as soon as we can make arrangements. If we are permitted to finish this house, I propose to proceed at once to try and finance and build a house.

"We haven't any definite plans except that is what we plan to do. I don't know whether we can be able to build a house in six months or a year or a year and a half or two years. I can't tell what might come up. I might be able to build it within three months or six months. I have no other property than this. This lot is not quite paid for. We

have been paying on it since we have been married, by the month.

"I am working on a salary of $150.00 a month, and that is all the income I have at the present time; that is not all I expect to have in the future, but I don't know and couldn't say when it will be more.

"I have not mapped out any plans for the house to build; I have not drawn up any plans and specifications; the lot lacks a little of being paid out. I am borrowing the money to build this garage and servant's house. I do not think it would be absolutely necessary to get the lot clear before I could borrow money to build a house. I could not say definitely at this time when I will start building the house. I do have a plan in my mind that I am going to build this home, and I might be able to get to it within six months."

Mrs. Hansen was also sworn as a witness and testified among other things as follows:

"If we are permitted to complete this servant's house and garage we intend to live in it temporarily. We intend to build us a home or residence on the other part of the lot. We never at any time had the idea of going into the servant's house and garage and living there permanently. It has always been mine and my husband's idea to live there only until we can construct our home. It was the idea of myself and my husband at the time we began the construction of this garage and servant's house that we would not begin building a home in front of the lot until we could make arrangements to build and finance a nice house. We have no idea of living in the garage five years or ten years, just temporarily; I don't know how long that would be, until we could finance ourselves, and get a loan to put the building on."

" * * * We haven't any definite plans now to build a house up on the front of the lot but we have had it in our minds what we are going to do; we have made no definite arrangements about it. I couldn't tell now just how long we will live in this temporary house."

It is contended by White et al. that the holding of the Court of Civil Appeals at Dallas in the instant case [21 S.W.(2d) 1091] is in conflict with the holding of the Court of Civil Appeals at Galveston in the case of Plaster v. Stutzman, 8 S.W.(2d) 750, 751. An examination of the restrictive covenant construed in the Plaster Case shows that it contained the express provision that: "And no building constructed for purposes other than a residence shall be used or occupied as a residence."

The Galveston court held, in a suit to enjoin the lot owner from using a garage as a residence in violation of a building restriction contained in the deed very similar to the one here involved, except such deed had the above express provision not contained in the instant deed, that a contention by the lot owner that he occupied the garage temporarily pending construction of the main residence presented no defense. On account of the fact that the deed in the Plaster Case contained the above express provision, not contained in the instant deed, we are unable to hold that the two cases present a conflict.

■ We do not think that under the wording of the restrictive covenants of the deed here involved it is absolutely essential that the main residence be constructed or begun before the outhouses, such as servants' quarters and garage are constructed or begun; but we do hold that this deed, at the very least, contemplates that, where outhouses are first constructed, the main residence shall thereafter be at once erected without delay. It is not contemplated that the lot owner may erect a house such as this, which, in its predominant features, is a residence as long as it stands alone on the lot, and live therein for an indefinite period, just because he has formed an intent in his own mind to, at some undetermined time in the future, erect the residence required by the deed. Such a construction would practically nullify the restrictive covenants in the deed.

■ In this case the testimony of both Mr. and Mrs. Hansen, construed in its most favorable light in their behalf, shows that they merely hope or intend, at some very indefinite time in the future, to comply with the deed with reference to the residence. Their testimony taken as a whole demonstrates, as a matter of law, that they intend, when they are able, and can secure the finances to do so, to build the main residence; and that they do not intend to do so at once after the house here involved is completed. In other words, the testimony of the Hansens, as a matter of law, establishes the fact that they are building the house here involved in violation of the restrictive covenants contained in their deed.

We recommend that the judgments of the Court of Civil Appeals, and of the district court, be both reversed and the cause remanded to the district court for a new trial.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded to the district court, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.