162 So. 671

### McKEE v. CLUB–VIEW HEIGHTS, Inc.

### 7 Div. 332.

Supreme Court of Alabama.

June 27, 1935.

Rutherford Lapsley and Willett & Willett, all of Anniston, for appellant.

Knox, Acker, Sterne & Liles, of Anniston, for appellee.

BROWN, Justice.

The original bill was filed April 24, 1931, by appellee and twelve of its grantees, each the owner of a residence in Club-View Heights addition to the city of Anniston, Ala., against appellant to enjoin and restrain him from maintaining as a residence on a lot in said addition purchased by him from appellee, a combination servant's house and garage erected at a cost of from $1,000 to $1,300, alleged to be in violation of the restrictive covenants in the deed of conveyance executed to him by appellee.

The bill alleges, in short, that all the land embraced in said addition was originally owned by appellee, Club-View Heights, Inc.; that appellee laid out and promoted said addition to said city as an exclusive residential district "in pursuance of a uniform scheme of residential planning"; that said addition consists of 140 lots, of which about 40 had been sold to different and sundry persons for residential purposes; that in all conveyances made to the lots in said addition there was embodied the same restrictive covenants as those incorporated in the conveyance to appellant, except that the required costs of construction of residences varied, according to the location of the respective lots, from $2,500 to $5,000.

The conveyance to appellant was of lot No. 8 in block 565, as designated on the map of Club-View Heights, subdivision, and the restrictive covenants embodied are:

"This conveyance, however, is made on the following conditions, which shall be construed as covenants that run with the land, and shall be binding on the grantee and on his successors and assigns until November 1, 1946, as follows, to-wit:

"1. The said land shall be used only for residential purposes, and no business house or public garage shall be constructed thereon.

"2. That no dwelling house built on the said land shall be so constructed that its front line (which means the front line of any porch or other projection not counting steps) shall be less than thirty feet back from the front property line of the said land.

"3. That the construction cost of all buildings, including garage and servant's house, if any, erected on the land shall not be less than Thirty-five hundred dollars.

"4. That not more than one dwelling shall be constructed on each lot, except that necessary garages and servant's house may be erected on the same.

"5. That not less than sixty feet in width of land, except where the lots as shown on the plat are less than sixty feet, shall be used for the premises of each dwelling built on the said land."

By his answer the appellant disavows any knowledge as to what, if any, restrictive covenants were embraced in the deeds to other grantees, or as to the alleged "scheme of residential planning," but admits that his deed embodied said covenants, of which he had knowledge, but he avers that said covenants "did not specify that the cost of all buildings, including servant's house and garage, if any, should be erected contemporancously, although specifying that the total cost of all three should be $3,500.00, it

did not specify that all three should be erected at the same time. * * * that the building that he erected on the rear end of said lot along the alley was erected to be used temporarily by him in good faith as a servant's house and garage. He fully intended when the financial situation improves, which the respondent avers is now most acute, * * * to convert the property that he is now occupying and using into a servant's house and garage, and that he is occupying it temporarily as a residence until he can erect his main residence, which at this time respondent avers is not practicable or feasible as he can not raise necessary finances to construct same. * * * · that the covenant in said deed to him from the Club-View Heights Company * * * prescribes neither time limit, nor exact order in which house shall be built on the lot, nor is there found any restrictive covenant in said deed as to the cost of servants' houses, garages, etc., wherefore respondent says that the building he erected upon said lot, he did so with the bona fide intention within a reasonable time thereafter of erecting a main residence on the front end of the lot in strict compliance with the restrictive covenant contained in said deed, wherefore respondent says he has not violated in any manner any restrictive covenant of said deed."

The answer was filed October 18, 1932, after a general demurrer for want of equity, interposed to the original bill, had been overruled.

Thereafter, on November 8, 1933, the respondent filed a demurrer to the original bill, questioning its sufficiency for failing to show any privity of contract between the complainants; grantees, and the respondent, and for failing to allege that the "uniform scheme of residential planning" was incorporated in the deeds executed to purchasers of lots in said addition, and on other grounds.

Thereafter, on September 7, 1934, the complainants amended the bill by striking as parties complainant all of the complainants, grantees, leaving the appellee, Club-View Heights, Inc., as the sole complainant.

The respondent thereupon refiled the demurrers filed in November, 1933, additional demurrers to the bill as amended, and several additional specific grounds of demurrer to the bill as amended.

However, it does. not appear from the record that the cause was submitted for de-

cree on the demurrer filed in November, 1933, or as refiled with the additional grounds in September, 1934.

The testimony was taken by oral examination of the witnesses in the presence of the court, and was submitted for final decree on the bill as amended, the answer and the proof on January 24, 1935; and on February 13, 1935, the court entered a final decree granting the complainant relief, permanently enjoining the respondent, after the expiration of eighteen months from the date of the decree, "from maintaining upon that parcel of real estate situated in the City of Anniston, Calhoun County, State of Alabama, known and designated on the map of Club-View Heights subdivision as Lot No. 8, in Block No. 565, the structures now thereon, unless within eighteen months from this date there shall have been erected or built upon said tract, and completed, additional structures (consisting of garage or servant's house or garage and servant's house), costing not less than $2,300.00, or a combination (costing not less than $2,-300.00) of new structures and additions or extensions to present structures," specifying further the manner of compliance, and the court retaining jurisdiction to enforce the decree.

It is well settled by the repeated decisions of this court that the owner of land, in making a sale thereof, may retain an easement or impose a servitude in the land sold, and, when not in restraint of trade, may retain in himself certain uses, which would otherwise pass to the grantee. "Such retention, or limitation of the use, being a condition upon which the estate is acquired, attaches as an infirmity in the estate itself, and as a privilege or easement in the estate of the grantor, in whose favor the limitation is imposed." Webb v. Robbins, 77 Ala. 176, 183. The grantee in accepting the deed containing such conditions or covenants accepts the title encumbered thereby, and is bound as though he had signed the conveyance, and "he cannot complain, for he purchased and paid for only a qualified use." Morris & Morris v. Tuskaloosa Manufacturing Co., 83 Ala. 565, 571, 3 So. 689, 691.

It is also well settled that if the grantee subjects the estate to uses in violation of the restrictive conditions or covenants, the jurisdiction and powers of a court of equity may be invoked to enforce the equity or right so reserved, regardless of the solvency or insolvency of such gran-

tee. Webb v. Robbins, supra; Robbins v. Webb, 68 Ala. 393; McMahon v. Williams, 79 Ala. 288; Morris & Morris v. Tuskaloosa Manufacturing Co., supra.

The bill as originally filed was therefore not subject to the general demurrer for want of equity, and that demurrer was properly overruled.

The amendment to the bill striking out all the parties complainant, except appellee, Club-View Heights, Inc., in view of the principles stated above, rendered immaterial the question as to whether or not the subdivision was laid out "in pursuance of a uniform scheme of residential planning," except in so far as the complainant voluntarily assumed the burden by the averments of his bill; and rendered immaterial appellant's contention that such scheme must be incorporated in the deed. However, it may be noted that this question was settled contrary to appellant's contention in the case of Scheuer v. Britt, 218 Ala. 270, 118 So. 658.

The view we take of the case renders further treatment of that question unnecessary.

The question of controlling importance, as we view the case, is: Was the defendant, appellant here, subjecting his lot to uses in violation of the restrictive covenants in his deed on and prior to the 24th of April, 1931, the date of filing the bill? If so, the complainant was entitled to a decree enjoining him from such use. If not, the bill must be dismissed for want of equity.

To state the proposition in a different form, if the defendant was not violating the restrictive covenants in the deed at the time the bill was filed, the complainant then had no cause of action, and it had no right to subject the defendant to harassing litigation in anticipation that he would in the future subject said property to unauthorized uses.

If, as held by the Commission of Appeals and approved by the Texas Court in White et al. v. Hansen et ux., 36 S.W.(2d) 456, 458, the restrictive covenants in the deed here involved, contemplated that in case the outhouse, servant's quarters, and garage are first constructed, the main residence must "be at once erected without delay," the complainant was entitled to relief, because it appears without dispute that the lot was purchased on March 27, 1930, the building constructed for use as a serv-ant's house and garage, but temporarily used as a place of residence, was completed in September, 1930, and nothing was done toward the construction of the main residence, except the ground constituting the residence site was graded and leveled off.

If, on the other hand, the covenants contemplated that said main residence should be constructed within a reasonable time after the building of the subsidiary structures (as was held by the Texas Court of Civil Appeals in the Hansen Case, 21 S.W.(2d) 1091, following a previous holding of the same court in Pierson et al. v. Canfield et al., 272 S. W. 231, 234), and eighteen months was such reasonable time, as indicated by the decree of the circuit court, the complainant was not entitled to relief.

The bill was filed within thirteen months from the execution of the deed, before the last note given for the purchase of the lot matured, and about seven months after the completion of such subsidiary structures.

The restrictive covenants expressly authorized the construction of a servant's house and a garage, and one dwelling house, but do not specify the order of their construction, or fix any time limit for the construction of any or all of such buildings; nor do they prohibit the use of the servant's house as a temporary dwelling place.

It is familiar law, that where a contract or conveyance expresses no time for the performance of an act contemplated by such contract or conveyance, a reasonable time is implied. What constitutes a reasonable time depends upon the subject-matter, the nature of the act to be performed, and the situation of the parties. If the facts are undisputed, the question is one of law for the court. If the facts are in dispute and the question rests in inference, it is one of fact. Burton v. Steverson, 206 Ala. 508, 91 So. 74; Pratt Consolidated Coal Company v. Short et al., 191 Ala. 378, 68 So. 63; Gorman-Gammill Seed & Dairy Supply Co. v. Carlisle, 220 Ala. 116, 124 So. 288; St. Mary's Oil Engine Co. v. Jackson Ice & Fuel Co., 224 Ala. 152, 138 So. 834; 6 R. C. L. page 896, § 283; 3 Perm. Supp. R. C. L. page 1582, § 283; 13 C. J. page 683, § 776, Note 1, where Alabama cases are collected; Black & Yates, Inc., v. Negros-Philippine Lumber Company, 32 Wyo. 248, 231 P. 398, 37 A. L. R. 1487.

The restrictive covenants in appellant's deed authorized the construction of a servant's house and a garage, and contemplated that the costs of such construction should enter into and constitute a part of the expenditure contemplated. There is no time limit specified; nor do the covenants specify the order in which the building scheme should be completed; nor is there anything in said covenants that prohibits the temporary use of the servant's house as a place of dwelling, pending the construction of the main residence. At the time the conveyance was made (and, as for that matter, at the time of the trial), the street in front of appellant's property had not been laid out and the grade established; there was no improvement of the street, no sidewalks; and the evidence goes to show that the borders of the lot had not been marked. The evidence further shows that the street had not been improved because the city was without funds; that purchasers who had completed their building schemes had financed them through loans and mortgages, and some had been in financial stress; that practically all building in the city of Anniston had been suspended because of the financial distress resulting from the depression.

In these circumstances we are clear in the conclusion that seven to eight months elapsing between the construction and completion of the subsidiary buildings and the filing of the bill did not constitute a reasonable time for the completion of the building scheme, and that the appellant, at the filing of the bill, had not therefore violated said restrictive covenants.

In the case of White et al. v. Hansen et ux. (Tex. Civ. App.) 21 S.W.(2d) 1091, 1092, cited and relied on by appellee, the restrictive covenants in the deed specified that: "*Any residence* erected shall be of stone, brick, brick veneer, or stucco on hollow tile, and shall cost not less than $4,000.-00." The deed contained no provision or stipulation as to servant's house and garage, and seems to have contemplated that bona fide servants should be provided for in the main building. In that case it appears that: "The development company [who was one of the complainants] was originally the owner of all the land that comprises the addition, and, when the addition was divided into blocks, streets, and alleys, this company promulgated a general scheme of developing the addition so as to make it a desirable residence section, to be used exclusively for such purposes, and *paved all of the streets within the addition.*" The lot involved was purchased in 1925, and the building commenced in July, 1929, and the case was decided in the Court of Civil Appeals in November, 1929, before the country, as we judicially know, was plunged into the depression. (Italics supplied.)

The facts and circumstances, including the nature of the restrictive covenants, differentiate the Hansen Case from the case at bar.

The judgment here is, that the bill was prematurely filed and the complainant was not entitled to the relief prayed at that time. The decree of the circuit court is therefore reversed, and a decree will be here rendered dismissing the bill, but without prejudice. The appellee is taxed with the costs in this court and the circuit court.

Reversed and rendered.

ANDERSON, C. J., and THOMAS and FOSTER, JJ., concur.