**GILLINGHAM et al. v. TIMMINS et al.**

No. 10213.

Court of Civil Appeals of Texas.
Galveston.

Feb. 11, 1937.

Rehearing Denied April 22, 1937.

T. H. Cody, of Houston (on original brief only), Lawler, Wood & Childress and R. Wayne Lawler, all of Houston, for appellants.

Stewart & DeLange, Albert J. DeLange, Robert P. Beman, Jr., and Emory T. Carl, all of Houston, for appellees.

GRAVES, Justice.

This appeal is from a judgment of the district court of Harris County—entered after a final trial upon the facts, on a jury's verdict in response to special issues, as well as upon the court's own findings on the law and the evidence—refusing the appellants a permanent mandatory injunction against the appellees, whereby the former sought to prevent the latter from building

and completing a so-called "garage-house" on a lot in Southampton place addition to the city of Houston alleged to be subject to a building restriction that required any dwelling place upon that lot to cost not less than $6,000, whereas this one would cost not over $1,250.

Appellants—through their able attorney, who is now a member of this tribunal—inveigh against such adverse judgment, in substance, upon these four propositions of law:

(1) The undisputed facts before the court and jury required an instructed verdict in their favor;

(2) Special issues Nos. 5, 6, and 8, were erroneously submitted over appellants' objection thereto on that ground, in that they unduly impressed upon the jury that —in the opinion of the trial court—the appellees' pleaded defense of a waiver of such claimed restrictions on appellants' part was meritorious;

(3) Under the undisputed facts otherwise appearing, the court reversibly erred in submitting special issue No. 9 inquiring whether or not the appellants, after learning that such a "garage-house" was being built on the lot involved, promptly gave the appellees proper notice of the formers' protest against its erection and use;

(4) The court reversibly erred in excluding proffered testimony from the appellants to the effect that when they themselves came to buy their lots in the addition, inducing representations were made to them by the promoters thereof that they were spending more than a million dollars in laying out improvements therein, that every lot was restricted as to the minimum cost of construction that could be placed thereon—and that they were led to buy because of such representations.

The trial court had originally granted appellants a temporary injunction that had remained in effect until the final trial on the merits, which became functus officio along with refusal of the permanent writ, herein so complained of.

In answering, the appellees counter, in material substance, with these opposing contentions:

(1) The uncontroverted testimony shows that appellees—knowing at the time that there were then many such "garage-houses" already existing and being used in the addition—so built the house in controversy on the back portion of their lot for a ga-

rage, to be used temporarily as a residence for themselves, they having matured plans for the construction of a principal dwelling on the front portion of the lot, then intending to use this structure as a garage and servants quarters.

(2) That there neither was when they so temporarily built their herein challenged structure, nor is there now, any binding restriction upon themselves and Southampton addition against their so building and living in a "garage-house" upon such property for such a use; that upon the face thereof, as well as under the preponderance of the testimony relating to any minimum value building restrictions that may have been established against lots in the addition, it is plain that they were not intended for application to garages so built and used for dwelling purposes, whether or not a principal dwelling house were erected upon the same lot at the same time.

(3) The original promoters of the Southampton addition—E. H. Fleming and the San Jacinto Trust Company—themselves construed the minimum cost provisions relied upon by appellants in the trust agreement and other documents, under which the property had been placed upon the market and sold, as not applying nor intended to apply to such garages used for dwelling purposes, which interpretation of the claimed restrictions appellants bought subject to and by which they were bound.

(4) The evidence conclusively supports the jury's verdict under special issues Nos. 5, 6, and 7 to the effect that not only has there been a general acquiescence by appellants, the promoters of the addition, and all others concerned, in such construction and use of "garage-houses" in the addition as places of residence prior to the erection of principal dwellings upon the various lots, but further, there had been a general abandonment therein of any prohibition or restriction against the use of such advance "garage-house" for residence purposes, and that appellants have waived the enforcement now of any such claimed prohibition against the appellees.

(5) The claimed restrictions having been, as applicable to such "garage-houses" for temporary purposes, so generally violated, abandoned and waived, the appellants, after further learning that such a residence garage was to be and was being built by these appellees, gave them no prompt or proper notice of any protest upon their part against its operation until the appellees had completed their building, all except

the painting and finishing of the roof thereon, wherefore the trial court was correct in refusing the prayed-for restraint at appellants' instance.

There are further answering presentments—not deemed needful of detailed statement—to the effect that appellees were not bound by the representations appellants declared upon as having been made to themselves, and that the court had erroneously excluded certain testimony the appellees offered in their own behalf tending to show express consent of the promoters of the addition for the erection and use of back-end garages for residence purposes like that the appellees had built.

The facts assumed by appellants to have so appeared from the undisputed evidence as to have left no alternative than a peremptory instruction in their favor on the whole case are substantially thus detailed in their first proposition:

That the 160-acre Southampton tract had been subdivided into 646 lots, subjected to a general plan, and all of them sold expressly subject thereto except 35 that remained unsold at the time of this injunction trial, whereby a minimum cost of construction was imposed upon each lot; that only seven lots exist in the addition on which there are "garage-houses" in violation of the minimum cost of construction restriction, that the nearest one of these to the appellees' lot fronts on a street two streets removed therefrom, that the other six thereof are located in blocks completely across the addition from it, save one—which fronts on another street from the appellee's lot, being three blocks away; that six of these seven violations occurred before most of the lot owners now living there moved into Southampton place; that the lot owners therein have organized themselves for the purpose of seeing that the improvements placed on the lots do not fall below the minimum applicable thereto; that the appellees were donees of their lot in question, which had been purchased by their donor expressly subject to the "restrictions" at the time when six of the seven stated violations had already occurred; and finally that all the lots in the addition are now two-thirds built up.

Deductions are then added to the effect that it follows from the things enumerated, as a matter of law, that the plan of the addition had not been abandoned, that the violated restriction was of value to the owners of lots therein, and that the trial court should have held accordingly.

In contrast to the controlling reaches of the cause, as thus promulgated by the appellants in substantially the same way upon both the trial below and this appeal, the learned trial court conceived it to be rather determinable upon questions of fact, which it submitted to and which were answered by the jury, with this resulting effect:

That the promoters of the addition originated a general plan or scheme for putting the property on sale to the public under the restrictions contained in a "Trust-Agreement" between them, dated October 15, 1922, which general plan intended to impose restrictions against the use for residence purposes of "garage-houses" on the portion of the lots where garages were permitted, but was not intended to inhibit the use of such "garage-houses" as places of residence before the erection of the principal dwelling place upon the lot; that this inhibition against "garage-houses" was for the benefit of all lot owners in the entire addition; that the appellees at the conclusion of the erection of the "garage-house" they built on their lot 10 in block 45 of the addition, which is the one here involved, had the bona fide intention of beginning some time in the future of the building of a principal dwelling on such premises at a cost of not less than $6,000—the amount called for in the restriction schedule referred to; that prior to the filing of this suit there had been a general acquiescence in the erection and use of "garage-houses" in the addition as places of residence prior to the erection of principal dwellings upon the lots, and that the appellants herein had at such time waived the enforcement of any such restrictions or inhibitions; that appellants would not suffer any substantial damage from the occupation by the appellees of their "garage-house" in controversy herein, that there had been before they began its erection an abandonment generally in the addition of any inhibition or restriction against the use of residence "garage-houses" prior to the erection of the principal dwelling upon the lots, and that the appellants herein, after learning that such a residence garage was to be built by the appellees, gave them no prompt and proper notice of their protest against its erection.

■ Looking at the record from the perspective of an appellate review, it is

obvious, that, if any one of these submitted issues embodied a material ground of defense against the mandatory injunction sought, no peremptory instruction right lay; so viewing the situation here presented, this court concludes that it was a question of fact—even under a proper construction of the "Trust-Agreement" itself—and especially as construed and acted under by the promoters and the lot owners themselves, inclusive of the appellants, as to whether or not such temporary "garage-houses" on the back ends of the lots, as the appellees were found on sufficient evidence by the jury to have made of theirs, were inhibited at all; when that instrument is looked to as an entirety and its provisions considered from its four corners, it seems plain that it contemplated the erection and use of garages and other buildings on the property than the mere final principal dwelling of the family upon the front end, and that it nowhere contained any intimation or reasonable implication to the effect that it would not be all right for the owners to occupy such garages for living purposes until they might be able to complete a principal dwelling on the front end of the property; especially where at the time of building and occupying the "garage-house" in the first instance they had a bona fide intention to later on, when Fortune more abundantly smiled upon them, further erect a more pretentious residence for themselves on the front part of the lot and up to the prescribed cost therefor; for this reason it is not deemed necessary to enter more minutely into the detailed contentions of the parties here, since the jury's verdict settled all of these contributing things in the appellees' favor.

In other words, it must here be assumed not only that the appellees built this $1,200 "garage-house" for such temporary residence purpose only, but also that they intended later on to reduce it to a mere garage and servants' quarters, after having a principal residence for themselves built on the front part of their lot not to cost under $6,000; their lot was the extreme northeastern tip of Southampton addition, and without quibbling about the number of other like ones that had been permitted in the addition prior to that time, nor their relative location with reference to this one, it is clear to this court that—especially as appellants neither prayed for nor showed any monetary damage resulting to them from this temporary construction and use of this property in the circumstances—that they were not entitled to the harsh visitation of a mandatory injunction, if the permissive use made by the appellees of their property was even a question of fact, as the court below determined; the terms of the "Trust-Agreement" and of the "basic restrictions" therein contained, as just indicated, instead of concluding that matter in appellants' favor as a matter of law, seem to plainly tend the other way, as this résumé thereof from the appellees' brief aptly shows:

"The executory trust-agreement hereinbefore referred to contains among others, the following provisions: authority to the trustee to reserve, set aside, segregate, or lease, any part of the trust-property for civic, business, or industrial centers, or buildings, golf links, athletic-fields, bowls, tracks, and courses for sports, and other like or necessary, or proper facilities, including site for water or sewer or works, gas, electric, or telephone plants, or systems, or any other purposes not inconsistent with the objects and plans of this trust; to construct or cause to be erected business property * * * ; the first party (Fleming) and the trustee (San Jacinto Trust Company) may amend the rules and make additional or supplemental rules, or change, suspend, or repeal, them from time to time. Trustee shall have sole and absolute power to decide any disputed point, matter, or thing whatsoever, * * * also to interpret any provision of this indenture which is of doubtful construction and involved in dispute, * * * any decision, judgment, act, course-of-action made, or adopted, by the trustee in carrying out the provisions of this section shall be deemed conclusive and binding upon all of the parties hereto. * * * The provision for 'basic restrictions,' does not impose them, but contains an executory-agreement to impose them. It does not expressly provide that they shall run with the land, nor that they shall be binding upon sub-vendees. The restrictions (paragraph a) restrict against certain businesses and 'any noxious interest, trade, or business,' but do not restrict against all business; provide that property shall not be used for 'wholesale or retail business,' except as designated by first party, and restrict against ownership or leasing by African or Mongolian races, restrict against Oil drilling, etc., except by consent of a majority of lot-owners, and pro-

vide in paragraph 'e' for certain restrictions as to building upon the lot. In subsection 'e,' 'dwellings' are restricted to a certain minimum, $6,000.00 being applicable to the block 45 in controversy. But the premises are not restricted to dwelling-purposes only, nor to buildings for dwelling-purposes only, nor to buildings incidental to dwelling-purposes, nor incidental to dwellings. On certain roads or streets there is a restriction to dwellings, or two-story dwellings, but such a restriction is not made with reference to the property in controversy. It will be noted that the reservation of right to alter, amend, or change regulations, etc., above referred to, does not require any consent or joinder of the lot-owners. In the conveyance from San Jacinto Trust Company to Scott (through whom the appellees' lot came down to them), it is recited that the conveyance is made subject to the restrictions, covenants, and conditions fully set out and described in the trust-indenture executed by E. H. Fleming and San Jacinto Trust Company, dated October 15, 1922, and recorded in Volume 567, page 413 of the Deed Records, and in a certain deed executed by Fleming to San Jacinto Trust Company, dated April 16, 1923, and recorded in Volume 529, page 462. As hereinbefore set forth, the trust-indenture did not presently impose restrictions, and left discretion and latitude to the trustee as to what restrictions should apply and upon which property they should apply, except as to particular property, and the latter instrument referred to, viz., the deed, imposed no restrictions whatever."

So, it indisputably appears: (1) That the "basic restrictions" relied upon, if ever actually imposed upon the property, were only basic—that is, performing the office of a foundation upon which others might later be superimposed, of which none interdicting the temporary use of "garage-houses" ever were; (2) that the right to change, amend, or construe the regulations was reserved to the selling agent, the trustee, to the exclusion of all lot owners; (3) that all either of the makers of this "Trust-Agreement" obligated themselves to see to was that such "basic restrictions" only were placed in the various deeds of conveyances of the property, expressly "vesting in the respective lot-owner the exclusive right to enforce such restrictions," with, however, this provision: "But the trustee and the first party reserve the right and option of bringing any and all

actions at law or in equity that they may deem fit and proper to properly enforce each, and all of these restrictions until all of said property shall have been sold and this trust fully terminated."

Since such makers did not bring nor join in this action, it presumptively appears that they did not "deem it fit and proper"—the trust not having terminated, and there still remaining 35 lots of the addition unsold.

Although being thus of record charged with notice and knowledge that the enforcement of all these restrictions—subject to the proviso just quoted—was their sole province, and although each and all of them testified on this trial that there were in use such "garage-houses" as the one here involved on the back parts of various lots of less than the minimum dwelling cost specified in the quoted restriction at the time they severally bought their own lots in the addition, yet they did nothing whatever toward undertaking an enforcement of this claimed restriction against the appellees until they applied for—and obtained without a hearing—the temporary writ the trial court first issued in this cause on the 29th day of July, 1931; at that time this construction was practically complete, only parts of the roof and the painting of the house remaining to be done, which the trial court subsequently permitted to be added by a modification of its original fiat.

■ The belated fact appellants' first proposition in this court cites that they "have organized themselves for purposes that include seeing that the improvements that are placed on the lots amount to not less than the sum applicable to such lots," therefore, contributes nothing towards a peremptory instruction in their favor, any right or authority in them to interfere— if it ever existed—having been lost by their inaction in such circumstances. 12 Texas Jurisprudence, p. 172, Covenants and Conditions § 108; Dellaughter v. Hargrove (San Antonio Civ.App.1931) 40 S.W.(2d) 253; Clifton George Co. v. Great Southern Life Ins. Co. (San Antonio Civ.App.1921) 234 S.W. 705; Foster v. Bunting (Ft. Worth Civ.App.1929) 19 S.W.(2d) 784; Johnson v. Poteet (Dallas Civ.App.1926) 279 S.W. 902, writ of error refused.

The construction herein given of the promoters' "Trust-Agreement" is thought to be consonant with the rule applied to similar documents in these authorities: Couch v. Southern Methodist University

(Tex.Com.App.) 10 S.W.(2d) 973; Austin v. Richardson (Tex.Com.App. Section A, 1926) 288 S.W. 180; Settegast v. Foley Bros. Dry Goods Co. (Com.App. Section A, 1925) 114 Tex. 452, 270 S.W. 1014; Davis v. Skipper (Com.App. Section A, 1935) 125 Tex. 364, 83 S.W.(2d) 318; Pierson v. Canfield (Dallas .Civ.App.1925) 272 S.W. 231, 234.

In the Pierson Case the Dallas Court of Civil Appeals thus stated what it is thought constitutes the gist of this case ·also: "In view of the fact that forfeitures are never favored, we are of the opinion that, if appellant, in good faith, erected a servant's house to be used as a residence temporarily, with the bona fide intention, within a reasonable time, of erecting a main residence on the lot in compliance with the restrictions in the deed, it would not constitute a violation of the restrictive covenants."

Under the facts appearing in that cause, which do not seem in legal effect different from those obtaining here, it becomes plain that this cause is on a general parity with those last cited, which clearly are in a different class from those relied upon by the appellants herein, such as Green v. Gerner (Tex.Civ.App.) 283 S.W. 615, Russell Realty Co. v. Hall (Tex.Civ. App.) 233 S.W. 996, White v. Hansen (Tex.Com.App.) 36 S.W.(2d) 456, and many others.

In this connection, in view of the quoted provisions of the "Trust-Agreement" set out supra, it seems clear that the testimony offered by the appellees with the objective of showing that these promoters of the Southampton addition—under the powers so specifically reserved to themselves in that document—had expressly consented to the erection and use as temporary dwellings of such "garage-houses" as this one was on the back portions of lots quite generally distributed through the property, prior to the erection of principal dwellings thereon was admissible; an examination of that proffered testimony in the bill of exceptions brought up by them with this record shows that it tended to prove such express consent and acquiescence.

It follows from what has been said upon the controlling features of the cause as so tried, that no prejudicial error was committed by the court in submitting special issues Nos. 5, 6, 8, and 9, as contended in appellants' second and third propositions, summarized supra; if there was any error at all in putting any one of these issues before the jury, it is deemed to have been harmless, hence not to require a reversal.

Neither, it is thought, was there any error in the exclusion of the representations appellants alleged the promoters of the addition made to them when they came to buy, that a million dollars was being spent in laying out improvements in the addition, and that every lot therein was restricted as to the minimum cost of construction; obviously the appellees could not be held to have been bound in the circumstances.

Without further discussion, under the conclusion that no prejudicial error was committed, the trial court's judgment will be affirmed.

Affirmed.

CODY, J., not sitting.

On Motion for Rehearing.

GRAVES, Justice.

The arguments of appellants on rehearing, much extended both as to intrinsic matter and indulgence of time in presentment, very forcefully urge through new counsel who succeeded their former one on his accession to this bench, have been carefully considered; this court, however, composed as it is of the same two members who constituted its majority in rendering the main ones of its former judgments the appellants invoke herein in their favor, are constrained to adhere to our former determination of this cause; in other words, they do not see any such a conflict as appellants now allege between its holding this time and those in such causes as Gordon v. Hoencke (Tex.Civ. App.) 253 S.W. 629, Green v. Gerner (Tex. Civ.App.) 283 S.W. 615, and Plaster v. Stutzman (Tex.Civ.App.) 8 S.W.(2d) 750; nor, notwithstanding a slight error in recitation on the last page of its original opinion wherein it stated this cause to be on a "general parity" with such cases as Pierson v. Canfield (Tex.Civ.App.) 272 S.W. 231, when it only meant the comparison to apply to the purpose common to both those cases for the garage-house to be occupied only temporarily, do they think their holding so made here to be in anywise in conflict with the holding of our Supreme Court in White v. Hansen, 36 S.W.(2d) 456, which is so clearly distinguishable on the facts that the matter does

not appear to them to be even debatable; in the first place, that opinion itself, after first distinguishing this cause from the Plaster Case, supra, makes plain that the action there was by both the promoters and the other lot owners together as plaintiffs, instituted immediately on the beginning of construction on the house there involved, and that it rested upon plain restrictive covenants that were definitely established, that ran with the land, a breach of which expressly, ipso facto, and immediately, caused a reverting of the title itself to the grantor of the lot; no issue being raised either as to such kind and quality, or as to the validity of the restrictive covenants there in question; that situation is indeed a far cry from that obtaining here, which has been fully outlined, without successful attack, in our original opinion; furthermore, there were none of the fact issues as to acquiescence, waiver, abandonment, and general meaning of such restrictions as were found to be actually existent in this instance.

Moreover, it indisputably appears that these appellants literally locked their barn after the horse had gone, in that they took no action whatever towards stopping the construction of this garage-house, although admittedly having known of it and many others like it promiscuously throughout the addition that had been likewise so built and used for practically the ten years of the addition's existence, until the house was virtually complete; not even then did they go further than to pray for a mandatory injunction—one among the harshest of legal visitations—against the "erection" only of such house; in such instance, the matter was clearly one, under all the facts, of what the sound discretion of the trial court called for. Morrison v. Work, 266 U.S. 481, 490, 45 S.Ct. 149, 153, 69 L.Ed. 394. That it called for the order entered, we have no doubt.

As originally pointed out, appellants made no attack upon the verdict on the special issues submitted—only contending they should not have been submitted—wherefore, on the appeal all those findings, if material, must be regarded as the established facts; yet their motion for rehearing argues at great length for a different state of the evidence, especially concerning the question as to whether or not there had been a general acquiescence in the erection and use of many garage-houses, prior to the building of principal dwellings, for the ten years of the addition's existence, such as that of the appellees; but obviously this may not prevail against the contrary findings so made by the jury.

Without further discussion, reiterating its conclusion that the trial court did not err in so submitting the cause to the jury, and that the proper judgment was rendered upon the evidence and its verdict, the motion will be overruled.

Overruled.

CODY, J., not sitting.