Mobile Airport Authority ("MAA") brought this unlawful detainer action against Englund's Flying Service, Inc., ("Englund") to obtain possession of real *Page 1372 
property occupied by Englund at the Mobile municipal airport. MAA alleged that Englund had breached provisions of a lease entered into by the parties that required Englund to construct a 12,000-square-foot hangar in compliance with a Mobile city ordinance. After a judgment for Englund in the district court, MAA appealed to the circuit court. There, a jury returned a verdict for MAA. Englund appeals from the judgment entered on that verdict.
Englund is a fixed base operation ("FBO") involved in charters, flight training, aircraft rental, and the sale of gasoline. The present lease was entered into between Englund and the City of Mobile before MAA took over operation of the airport. MAA was made a party to the lease by amendment.
In 1972, the City passed an ordinance that amended a 1965 ordinance establishing minimum standards for FBOs at the airport in Mobile. Englund did not meet the minimum standards for hangar space established by this ordinance at the time it was passed in 1972. Englund was providing many of the same services mentioned in the ordinance and desired to become an FBO. In 1975, Englund entered into a lease with the City that obligated the City to build a 12,000-square-foot hangar on Englund's leased portion of the airport.
The City did not build the hangar and, in 1978, Englund sued the City, alleging breach of contract for the City's failure to build it. The 1978 case was resolved by execution of a new lease, along with a settlement agreement and a release. These documents were executed on July 6, 1982.
The settlement agreement set forth certain conditions imposed on the parties for the execution of the new lease. One such condition obligated the City to relocate water and other utility lines as necessary for the construction of the hangar. Paragraph 4 of the settlement agreement states:
 "City shall, at its sole cost and expense, relocate one time, and one time only, all water lines, drainage ditch and sewer and utility lines, if any, on the leasehold estate as required for construction of a new hangar and office building to be erected by lessee within a period of no more than three years at lessee's sole cost expense."
The 1982 lease shifted from the City to Englund the responsibility to construct the 12,000-square-foot hangar on the leased premises to conform with the city ordinance cited above. The lease provides the following on page seven, in the paragraph entitled "Improvements/Appraisal":
 "Lessee shall construct on the demised premises within 36 months of the date hereof a hangar and office building."
On page eight of the lease, the paragraph entitled "Failure to Construct" states as follows:
 "In the event that lessee fails to erect a hangar and office building as referred to previously herein sufficient to conform to the minimum standard ordinance for FBOs in the City of Mobile within thirty-six (36) months of the date hereof, then in that event, lessee shall pay to lessor retroactive to the date of execution hereof the full percentage rents or minimum rent described above, whichever is greater, without reference to any improvements which lessee might have erected on the demised premises."
MAA brought this unlawful detainer action after Englund had failed to construct the hangar within the 36-month period following execution of the 1982 lease and settlement agreement.
Englund argues that the trial court erred in the following respects: 1) in determining that the only issue to be decided at trial was "If failure to build hangar is lessee's fault, lease has been terminated; if failure is lessor's fault, lease has not been terminated"; 2) in admitting the lease into evidence without permitting testimony as to the four corners of the document, including the penalty provision of the failure-to-construct clause; 3) in failing to make a finding that the lease was ambiguous before submitting the case to the jury; and 4) in allowing extrinsic evidence as to the meaning of the contract.
After hearing the parties' pre-trial motions for summary judgment, the trial judge who was scheduled to hear this case noted on the docket sheet that the only *Page 1373 
issue to be tried had been narrowed as follows: "If failure to build hangar is lessee's fault, lease has been terminated; if failure is lessor's fault, lease has not been terminated." Thereafter, the case was eventually tried before another judge, who apparently relied on the narrowing of the issue on the docket sheet in refusing to admit certain evidence offered by Englund.
Englund contends that such a narrowing of the issue was erroneous because, Englund says, it resulted in preventing evidence beneficial to Englund's case from being admitted into evidence. Specifically, Englund argues that the trial court erroneously excluded evidence concerning the "Failure to Construct" clause. It is Englund's position that this clause was in the form of a liquidated damages provision, with the cash award set out therein being the sole remedy available to the City in the event of Englund's failure to construct the hangar. This is not a reasonable construction of the "Failure to Construct" clause. The lease provides for a reduced rental during the three-year period allowed for construction of the hangar and commencement of operations. The reduced rentals, appearing in provisions captioned "Construction Phase" and "Start-Up Period," contemplate that the lessee would be constructing and starting up during this period. The "Failure to Construct" provision simply reinstates the regular rental should the lessee fail to build the hangar during the prescribed period. It does not obviate the provision of the lease that permits the lessor to re-enter the premises upon default of the provision requiring construction of the hangar within 36 months.
A court must construe a contract in its entirety, and single provisions or sentences are not to be dissociated from others having reference to the same subject matter. City of Albany v.Spragins, 208 Ala. 122, 93 So. 803 (1922); Brush Electric Light Power Co. v. City Council of Montgomery, 114 Ala. 433,21 So. 960 (1896). The mere fact that adverse parties contend for different constructions does not of itself force the conclusion that the disputed language is ambiguous. Antram v. StuyvesantInsurance Co., 291 Ala. 716, 720, 287 So.2d 837 (1973).
The fact that Englund may be required to pay increased rentals under the terms of the lease as a result of its failure to construct the hangar as required by the contract was not relevant to the primary issue in this case: whether the lease should be terminated and possession reclaimed by MAA. Because there is no ambiguity in this provision of the lease, the trial judge was correct in refusing to allow extrinsic evidence concerning it.
Englund's primary contention at trial was that it was prevented from building the hangar by MAA's failure to comply with the contract and move the utility lines necessary for the construction. The trial judge correctly identified this as the pivotal issue in his notation on the docket sheet. This allowed the trial to focus on Englund's principal contention. After hearing motions for summary judgment, it is within the discretion of the trial court to "ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted." Shades RidgeHolding Co. v. Cobbs, Allen Hall Mortgage Co., 390 So.2d 601,612-13 (Ala. 1980); Ala.R.Civ.P. 56(d).
It was not error for the trial court to establish prior to trial what was in fact the pivotal issue in contention in the case.
The lease provided that the City would relocate the water, sewer, and utility lines and the drainage ditch one time onlyas required for construction. No specific time was set for this work to be completed. Englund does not dispute the assertion that it never called upon the City to relocate the lines. Englund argues that prior to receiving extraneous evidence concerning this provision or sending the lease to the jury for interpretation, the trial court should have made a finding that the lease was ambiguous. Englund claims that the court improperly refused either to construe the contract or to make a determination that it was ambiguous. As a result, it argues, the admission of extraneous evidence concerning this provision was error.
Because the provision requiring relocation of utilities did not specify a time *Page 1374 
for completing this work, the law implies a reasonable time. What is a reasonable time must be determined by the trier of fact after considering the nature of, and the circumstances related to, the act to be done. Hendrix, Mohr Yardley, Inc.v. City of Daphne, 359 So.2d 792, 796 (Ala. 1978); Smith v.Pope, 280 Ala. 662, 197 So.2d 767 (1967); McKee v. Club-ViewHeights, Inc., 230 Ala. 652, 162 So. 671 (1935). Since no time was prescribed for the performance of the relocation work, what was a reasonable time was a question of fact to be determined by the jury.
In addition, no prior finding of ambiguity by the trial court was necessary. The evidence introduced was not introduced because of any ambiguity; it was introduced because it was relevant to the jury's determination of a reasonable time for the relocation of the lines.
Finally, Englund argues that the "as required for construction" clause should be interpreted to mean only that the lines have to be moved before a hangar may be constructed on the premises. MAA presented evidence to prove that Englund's interpretation was an unreasonably simplistic one, and that the parties understood that Englund would notify MAA of its construction plans prior to the relocation of the utility lines by MAA. While it was unreasonable to expect Englund to build a hangar before the relocation of the lines, as Englund argues, there was evidence presented from which the jury could have concluded that it was also unreasonable to expect MAA to move the lines before receiving notice from Englund that it intended to begin construction and without construction specifications.
Based on the foregoing, we hold that the trial court did not err in the trial of this case or in submitting this case to the jury.
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.