On May 10, 1990, Dunn Construction Company, Inc., as general contractor, entered into a contract with the Birmingham-Jefferson Civic Center Authority ("the Authority") for construction of the Authority's East Complex project. Thereafter, Wayne J. Griffin Electric, Inc., Guin Company, Inc., and Steel City Erection Company, *Page 316 
Inc., entered into separate subcontracts with Dunn for work to be performed on the project. After substantially completing the project, each subcontractor submitted to Dunn a one-page release; the language in each release was identical and the release provided, in part, as follows:
 "APPLICATION FOR PAYMENT AND PARTIAL RELEASE OF LIEN"
 "Subcontractor hereby releases and waives any and all claims and liens [of] whatsoever kind or nature
against DUNN, DUNN'S surety, the Owner, and against the building, improvements or projects and the land on which same is located with respect to work performed, materials furnished, or obligations undertaken . . . which in any way relate to the above mentioned construction improvements or project through the date of execution of this document.
 "Subcontractor makes this Affidavit in order to induce payment in the amount of $ _________ and on receipt of said payment by Subcontractor this release of claim and waiver of lien becomes in full force and effect."
(Emphasis added.) Each release was signed by an authorized officer of the respective subcontractor,[1] and each release was sworn to and notarized. Before executing the releases, none of the officers who signed the releases discussed the releases with anyone at Dunn or with anyone from their respective companies, and two of the officers testified that they did not even read the releases before signing them. No exceptions were noted on the releases.
Several weeks after the project was completed, each subcontractor submitted to Dunn, for the first time, claims for extra compensation for alleged delays, which had occurred before the execution and submission of the releases. The subcontractors also gave notice of their intent to file, and then did file, liens on the property. Subsequently, Dunn sued for a judgment declaring that the general releases barred the subcontractors' claims. The Authority moved to intervene as a plaintiff, seeking a similar declaratory judgment.
Dunn and the Authority moved for summary judgments, which the trial court entered "to the extent of the releases being enforceable in accordance with their terms excluding retainage and amounts due under the contract for work done after the last release and including change orders agreed to by the parties." The subcontractors appeal. We affirm.
According to the subcontractors, the trial court erroneously found that the language of the releases was unambiguous, as a matter of law, and improperly construed the submission of a routine application for payment and partial release of lien as a full release of all claims. They maintain, among other things, that the title of the release ("APPLICATION FOR PAYMENT AND PARTIAL RELEASE OF LIEN") "compels the court to find the release itself is ambiguous." They also maintain that the trial court erred in failing to consider evidence that the execution of the document was fraudulently induced.
A summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. All reasonable doubts concerning the existence of a genuine issue of material fact must be resolved against the moving party. SeeBechtel v. Crown Cent. Petroleum Corp., 495 So.2d 1052 (Ala. 1986). This case was filed after June 11, 1987; therefore, the applicable standard of review is the "substantial evidence" rule. See West v. Founders Life Assurance Co. of Florida,547 So.2d 870 (Ala. 1989); Ala. Code 1975, § 12-21-12.
The threshold question — whether a release is ambiguous — is a question of law to be decided by the Court, see, Baker v.Blue Circle, Inc., 585 So.2d 868 (Ala. 1991). If the Court finds the release to be unambiguous, then the construction and legal effect of the release are questions of *Page 317 
law, which, under appropriate circumstances, may be decided on a motion for summary judgment. See, Baker v. Blue Circle, Inc., supra. However, if the Court determines that the terms of the document are ambiguous in any respect, then the true meaning of the document becomes a question for the factfinder. See, e.g.,McDonald v. U.S. Die Casting Development Co., 585 So.2d 853
(Ala. 1991).
The mere fact that the parties argue different constructions of the document does not force the conclusion that the disputed language is ambiguous, see, Englund's Flying Service, Inc. v.Mobile Airport Authority, 536 So.2d 1371 (Ala. 1988). Rather, a document is unambiguous if only one reasonable meaning emerges, see Reeves Cedarhurst Development Corp. v. First Amfed Corp.,607 So.2d 184 (Ala. 1992). Furthermore, the designation that a party gives to an instrument, i.e., the title of a document or the caption of a provision, does not alter the meaning of the contents of the document — it does not control the interpretation or construction of the document, the legal effect of the document, or the relationship of the parties; and it does not determine the nature or character of the document. See 17A C.J.S. Contracts § 294, pp. 40-41 (1963). Rather, the written instrument must be construed in its entirety — single provisions or sentences are not to be disassociated from others referring to the same subject matter. See, e.g., Englund'sFlying Service, Inc., supra.
Thus, absent fraud, a release, supported by valuable consideration and unambiguous in meaning, will be given effect according to the intention of the parties from what appears in the four corners of the document itself; and parol evidence is not admissible to impeach or vary its terms. See, Cleghorn v.Scribner, 597 So.2d 693 (Ala. 1992); Whitman v. Walker CountyBd. of Education, 591 So.2d 481 (Ala. 1991); Alabama FarmBureau Ins. Co. v. Hunt, 519 So.2d 480 (Ala. 1987); Baker v.Ball, 473 So.2d 1031 (Ala. 1985). See, also, Ex parte AratexServices, Inc., 622 So.2d 367 (Ala. 1993).
That is, in ascertaining the intent of the parties, the plain and clear meaning of the terms of the document must be given effect, and the parties must be presumed to have intended what is plainly and clearly set out in that document. See Nix v.Henry C. Beck Co., 572 So.2d 1214 (Ala. 1990).
Construing the releases in their entirety, we find no ambiguity. Furthermore, the subcontractors presented no evidence that they were fraudulently induced into executing the releases. Therefore, because the releases are unambiguous and because there is no evidence of fraud, we must look to what appears on the face of the documents — to the clear and plain words of the releases — in order to give the releases effect according to the intentions of the parties; and parol evidence is inadmissible to impeach the terms of the releases.
The plain and ordinary meaning of the words in the releases executed by the subcontractors is to relieve Dunn and the Authority from "any and all claims" the subcontractors may have that in any way relate to the construction "through the date of execution of [the release]." If the parties had intended to limit the releases, they could have specifically done so. However, having not expressly limited the releases, the subcontractors cannot now assert an intent not found within the four corners of the document.
The summary judgment for Dunn and the Authority was proper.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.
[1] The releases submitted to Dunn were dated December 13, 1991 (Griffin); January 23, 1992 (Guin); and January 6, 1992 (Steel City). Subsequently, Griffin executed and submitted another release to Dunn dated March 31, 1992. *Page 318