# Brush Electric Light & Power Co. v. City Council of Montgomery.

## Action of Assumpsit.

1. *Contract in writing; rule of construction.*—A contract in writing must be read and construed in its entirety, without dissociating single clauses or sentences from others having reference to the same subject matter, and giving force and effect to them alone, and it must be construed according to its terms, by giving to its words, if of common use, their ordinary, usual significance, and if technical words are employed, their technical meaning must be ascertained and accepted; and this rule for the construction of the words of a contract prevails, unless it clearly appears from the context of the instrument that the parties did not use them in their ordinary or technical sense.

2. *Contract for lighting streets of city; construction thereof; evidence of breach; case at bar.*—An electric light company entered into a contract with a city whereby it agreed to furnish to the city at a fixed price 100 lights of certain candle power each, to be located at such places as designated by the municipal authorities, and guaranteed and warranted that the 100 electric lights would "furnish good and sufficient light for an equal territory to that now lighted by the gas company." It was further stipulated in the contract that if so directed by the proper municipal authorities, the company would light the public buildings with electricity, it being mutually agreed therein that the electricity used for such purpose was to be taken from the supply necessary to maintain the 100 lights, and that the company should be relieved from furnishing and maintaining so many of the 100 lights

28

[Brush Electric Light & Power·Co. v. City Council of Montgomery.]

as the electricity used in the public buildings would be necessary to maintain—eight lights in a building being the equivalent of one street light. The company furnished and maintained 92 street lights and 194 lights for the public buildings, the equivalent of twenty-four and a half street lights, of the capacity described in the contract, of all of which lights the city had the use and benefit. *Held:* that the warranty in such contract relates and is limited to the lighting capacity of 100 lights when used for the external lighting of the city, and the reduction of the number of lights below 100, by the exercise of the right on the part of the city to have the public buildings lighted, left no room for the operation of the clause of warranty; and, therefore, in an action by the electric light company against the city to recover for the use of the number of lights in excess of one hundred, evidence having a tendency to show that the city was not as well lighted by electricity as it was by gas is irrelevant and inadmissible.

3. *Same; action to recover for use of lights by city; evidence that city was not as well lighted as by gas inadmisiible.*—Where an electric light company enters into a contract with a city to furnish it a designated number of electric lights of a certain candle power at a fixed price, and guarantees and warrants that such number of electric lights will "furnish good and sufficient light for an equal territory to that now lighted by the gas company," and there is furnished by said company a greater number of lights than provided for by the contract, which are used and enjoyed by the city, in an action by said company again the city to recover for the use of the lights in excess of the number designated by the contract, evidence having a tendency to show that the city was not as well lighted by electricity as it was by gas is irrelevant and inadmissible; since under the clause of warranty, the inquiry is not whether the city was as well lighted by electricity as it was by gas, but whether the designated number of electric lights furnished by the electric company gave good and sufficient light for an equal territory to that which had been lighted by gas.

4. *Acts or declaration of agent of a corporation; when binding.*— The acts or declarations of the officers or agents of a corporation, private or public, as matters of evidence against such corporation, stand upon the same footing as the acts or declarations of an agent for a natural person; and to bind the corporation, the acts or declarations must be within the scope of the authority conferred upon the agent, and must be done or made while in the exercise of such authority.

5. *Same; authority of clerk of city council; when evidence of his statements inadmissible.* — Where the scope of the authority conferred upon the clerk of a city council is not shown, it can not be presumed he had authority to reject and assign reasons for the rejection of claims preferred against the city; and in an action against a city to recover an amount alleged to be due the plaintiff for a number of electric lights furnished to and used by the city, in excess of

[Brush Electric Light & Power Co. v. City Council of Montgomery.]

the number contracted to be furnished it, evidence of the reason assigned by the clerk of the city council for refusing payment of the bills for the extra lights when presented, is inadmissible in the absence of evidence showing that the said clerk was vested with authority to bind the city in such action, and was acting at such time within the scope of the authority conferred upon him.

6. *Same; president of board of directors.*—In the absence of evidence showing the authority of the president of the board of directors, it can not be presumed that he had any greater power in a matter under the control of the board, than any other director, and hence his acts and declarations, without such evidence, can not affect the corporation; and testimony of such acts and declarations is inadmissible in an action by the corporation.

7. *Same; ignorance of director of a corporation no excuse for not enforcing rights; evidence thereof inadmissible.*—The fact that one of the directors of a corporation was ignorant of the failure of such corporation to enforce certain contractual rights, is not competent evidence to explain such failure; and in an action against a municipal corporation by an electric light company to recover for the use by said city of a number of lights in excess of the number designated in a contract between the parties, evidence of a director of the plaintiff company that he did not know for one or two years that the company had furnished lights in excess of the number called for by the contract, is inadmissible to rebut whatever of unfavorable inference could be drawn from the failure of plaintiff to demand payment for the extra lights for four years.

8. *Capacity of corporation to contract; implied contract.*—A corporation may be bound by an implied contract to the same extent and in the same manner as a natural person, provided it is not limited to a particular mode of contracting by its charter, and such contract is in the line of its charter powers; and a city authorized by its charter to contract for its electric lighting, without restriction as to the manner of contracting, may be bound by an implied contract in respect to electric lights supplied to the city.

9. *Implied contract; when not shown; mistake in construction of contract.*—An implied contract will not arise under circumstances indicating that services were to be rendered or property was to be used and enjoyed without compensation; and hence, where one party to an express contract furnishes more property than the contract called for, and the other party accepts the use and benefit thereof under a mutual mistake as to the true interpretation of such contract, neither of the parties expecting compensation to be made for the extra property, no implied contract for the payment for the use of such property in excess of that contracted for will arise.

10. *Same; neglect to demand payment not conclusive against existence of implied contract.*—Where one party to an express contract renders more services or furnishes more property than the contract called for, and the other party accepts the benefit thereof, the mere fact of

[Brush Electric Light & Power Co. v. City Council of Montgomery.]

a neglect upon the part of the former to demand payment for the services or for the use of the property, is not conclusive against his right, and does not, of itself, determine the non-existence of an implied contract for him to be compensated for the services rendered or the property furnished; and whether the services were rendered and accepted, or the property furnished and used without the intent that compensation would be claimed or made, is to be determined from the relation of the parties, their course of dealing in each particular case, and other facts illustrative of their mutual concurring purposes.

11. *Same; same; contract of electric light company.*—The fact that an electric light company, which had a contract with a city to furnish it a designated number of lights, furnishes a certain number of lights in excess of those provided for in said contract for four years without demanding payment therefor, although paid monthly for those furnished under the contract, is not conclusive that the extra lights furnished by the company were intended to be gratuitous.

12. *Same; when shown to exist; discovery of mistake; notice of discontinuance.*—Where one party to an express contract renders more services or furnishes more property than the contract calls for, and the other party accepts the benefit thereof under a mutual mistake as to the true interpretation of such contract, if, upon discovery of the mistake, a demand is made for compensation for the extra services or property, or notice given of the discontinuance of such excess, neither of which is allowed by the other party who continues to use and enjoy the benefits of such extra services or property, there arises from the time of such demand an implied contract to pay reasonable compensation for the services.

13. *Same; same; case at bar.*—An electric light company furnished to a city a number of lights in excess of the number stipulated in its contract with said city. Thereafter it demanded payment for the extra lights, and on refusal, requested the city to designate the lights to be removed so as to reduce the number to that provided for in the contract, but the city refused to permit the removal of any of the lights, and continued to use them. *Held:* That there was an implied contract on the part of the city to pay for the use of the extra lights from the time of such demand.

14. *Same; what is reasonable compensation.*—Reasonable compensation depends upon the circumstances of each particular case, but in case of extra services rendered or property furnished, the general rule is that the implied compensation is measured by the same rate or prices specified in the contract; and especially is this true where the compensation is otherwise incapable of ascertainment.

15. *Pleading and practice; general issue; defense thereunder.*—The general issue limits the defense to proof of the allegations of the complaint, and does not authorize the introduction of evidence in support of an affirmative defense.

[Brush Electric Light & Power Co. v. City Council of Montgomery.]

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN R. TYSON.

This action was brought by the appellant, the Brush Electric Light & Power Company of Montgomery, Alabama, against the City Council of Montgomery; and sought to recover an amount alleged to be due from the defendant to the plaintiff, for certain lights, which had been furnished by the plaintiff and used by the defendant. The material facts of the case are sufficiently stated in the opinion.

R. B. Snodgrass was introduced as a witness in behalf of the defendant, and he testified that he had been city clerk or clerk of the city council for a long time; that he held said position on December 12th, 1887, and has held it ever since then; that by virtue of his office, he was keeper of the records and proceedings of the City Council of Montgomery; that he had looked over the books of proceedings or the journal of the city council from the first day of January, 1887, to ascertain whether or not the council ever authorized the placing of more than one hundred lights on the streets of the city of Montgomery; and he could not find anything on the minutes to that effect. Plaintiff objected to the questions eliciting the testimony as to the witness having examined the proceedings of the city council, and the result of such examination, and moved to exclude the said testimony from the jury; the objection to the questions and the motion to exclude being based upon the grounds that it was irrelevant and illegal, and that it was not necessary for the city council to have expressly authorized the placing of the extra lights. This objection and motion to exclude were each overruled by the court; and to each of said rulings of the court the plaintiff separately excepted. Witness further stated that he entered on the records the proceedings of the city council promptly as they were had. He further testified that at the time of making the contract, and for some time thereafter, Mr. B. Dunham was president of the Brush Electric Light & Power Company, and as such signed the said contract. Witness was then asked by defendant if Dunham, while president aforesaid, had a conversation with him, wherein he stated to Dunham that there was great complaint by citizens in parts of the city that the city was not lighted as well as by gas, and

if so, what reply Dunham made. To this question plaintiff objected upon the ground that Dunham had no authority to bind the company by any declarations he may have made; and, secondly, · that said question called for irrelevant and illegal evidence. But the court overruled said objection and permitted the witness to answer, and to this ruling of the court plaintiff duly excepted. In response to said question witness stated that about three or four months after they commenced putting in the lights Dunham and Gesner came into his office and commenced a conversation about the lights; that he informed him that there was a great deal of complaint by citizens in parts of the town, that it was not lighted as well as by gas; and that Col. Dunham said, we have placed extra lights, and will continue to put in as many extra lights to light the city as well as it was by gas. Witness further testified that all bills against the city were presented to him and came through his office; that under the system existing at that time bills were presented to him before the meeting of the council each month, and they were read in the council chamber by the finance committee, and passed or rejected, or referred to some committee as the case might be; and if passed for payment, he issued warrants on the treasurer for their payment, who paid the drafts; that the first bill for the extra lights claimed to have been furnished was for the month of January, 1892, and that thereafter bills for extra lights (16½ lights at 42½ cents per lamp per night) were regularly and for each month presented for payment; that the bills for these extra lights were never paid, and never recognized as a liability by the city council, but payment was made each month regularly for 100 lights, and only 100 lights. On cross-examination witness stated that the city council just took no action on the claims and bills for the extra lights claimed to have been furnished; and that they did not consider that they were liable, but ignored them.

Plaintiff then moved to exclude all the testimony in reference to the question as to whether the city was as well lighted by electricity after the contract between plaintiff and defendant as it had been before lighted by gas, upon the ground that the contract itself does not guarantee anything of the kind; and upon the further

[Brush Electric Light & Power Co. v. City Council of Montgomery.]

.ground, if the contract did so guarantee, the evidence shows, that if there is a breach of this guarantee, it has been waived by the city by the payment for the one hundred lights, which are not the subject of this suit, and which are not in controversy; and upon the further ground that if such evidence was admissible and relevant under any circumstances, it could not be introduced under the general issue, but as matter of defense under a special plea. The court overruled this motion to exclude, and plaintiff separately excepted to said ruling of the court. Plaintiff then moved to exclude all matter of evidence in reference to the candle power of the one hundred arc lights, first, because the contract itself provides a remedy which is not in recoupment; second, because the 100 lights are not in controversy, or the subject of this suit; but if so, that by the payment by defendants for said lights there had been a waiver on the part of the city of any breach of said guarantee; and third, because such a defense could not be set up under the general issue, but is matter of special plea. The court overruled this motion to exclude, and the plaintiff then and there duly excepted to said ruling of the court.

Under the hearing of all the evidence, the court at the request of the defendant instructed the jury as follows: "If the jury believe the evidence, they must find for the defendant." To the giving of this charge the plaintiff duly excepted.

There were verdict and judgment for the defendant. The plaintiff appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

JOHN G. WINTER, for appellant.—1. In the construction of a contract the whole instrument must be considered in arriving at the intention of the parties; and the object is, if possible, to effectuate this intention. We do not see how the contract under consideration is at all ambiguous.—*K. C., M. & B. R. R. Co. v. Crocker,* 95 Ala. 412; 1 Chitty on Pleading, 515-526.

2. Because the company accepted payment for the one hundred lights it did not waive its right to insist on payment for the extra lights furnished. But, the presumption of finality is destroyed when the details of the settlements show that the matters is controversy, though

anterior, are not embraced.— *Wharton v. Cain*, 50 Ala. 410. "The acceptance by a party of a portion of his demand against another, without any agreement to release the balance, is not a waiver of his right to insist upon payment of such balance."—*Burkham v. Mastin*, 54 Ala. 126.

3. The construction of the contract by the parties themselves does not necessarily control; but admitting for the sake of argument that the evidence tends to show a mutual construction, such rule does not apply in case of ambiguity.—Bishop on Contracts, § 412; *Dunn v. Bank*, 2 Ala. 152; *Comer v. Bankhead*, 70 Ala. 141; *A. G. S. R. R. Co. v. S. & N. Ala. R. R. Co.*, 84 Ala. 581.

GRAHAM & STEINER, *contra*.—The plaintiff can not recover in this case on the common counts.

If there is any liability against the defendant in favor of the plaintiff, it arises under a contract which was made on the 12th day of December, 1887, to begin on the 1st day of January, 1888, and continue for a term of five years, or until the 1st day of January, 1893. The contract was not completed, or, in other words, executed, until the 1st day of January, 1893. If it was not executed, then a suit upon it was not maintainable until after it became executed. The suit in this case was commenced on the 29th day of September, 1892—three months and two days before the expiration of the term of the contract, or before it became executed. It would not have become executed until January 1, 1893, therefore action would not lie on the common counts until that time.—1 Chitty on Pleading, (7 Amer. ed.), *373; 1 Chitty on Pleading, (17 Amer. ed.), *295, note e.; 2 Greenl. Evidence, § 104; *Holbrook v. Dow*, 1 Allen (Mass.) 397; *Beadle v. Graham*, 66 Ala. 99; *Darden v. James*, 48 Ala. 33; *Burkham Bros. v. Mastin*, 54 Ala. 126.

Though the suit had been brought after the contract had become executed, a recovery could not have been had upon the common counts with said contract as a predicate, because there is an entire absence of proof that the extra lights put in were at the request of the defendant either express or implied. This request must be averred in the complaint, and its proof is a necessary condition precedent to a recovery.—1 Chitty on Plead-

ing, (7 Amer. ed.), *376; 2 Greenl. on Evidence, (13th ed.), §§ 106, 107.

BRICKELL, C. J.—The complaint contains three counts—the first is a mere abbreviation of all the counts contained in the statutory form of a complaint on an account or verbal contract; the second and third are substantially the same, intended as a special statement of the cause of action, and claim compensation for seventeen electric arc lights, the plaintiff furnished the defendant during a particular period, at a specified rate or price. The defendant pleaded only the general issue.

The undisputed facts are, that on the 14th day of December, 1887, the parties entered into a contract whereby the plaintiff agreed for a term of five years, commencing on the first day of January, 1888, to furnish and maintain for the use and benefit of the city of Montgomery, one hundred Brush or United States Electric lights, or other standard light of two thousand candle power each. The lights were to be located at such places in the city as were designated by the committee on gas of the city council. The plaintiff guaranteed and warranted that one hundred lights would "furnish good and sufficient light for an equal territory to that now lighted by the gas company." A further stipulation of the contract is in these words: "The said party of the second part," (the plaintiff) "agrees and binds itself to light the public buildings of said city with electricity, under the direction of the committee hereinbefore named, and the electricity used for this purpose, it is mutually agreed, will be taken from the supply necessary to maintain said one hundred lights, and will relieve the party of the second part from furnishing and maintaining so many of said one hundred lights as above stipulated, as the electricity so used in said buildings would be necessary to maintain—that is to say, eight lights in a building shall be deemed the equivalent of one of said street lights." The stipulation on the part of the city is: "To take and use said one hundred electric lights for the period of five years, beginning on January 1, 1888, and to pay therefor to said party of the second part, at the rate of forty-two and a half (42½) cents per light per night; that is to say for each of said lights of said two thousand candle power, and the equivalent thereof, said price to be paid at the end of each month."

The plaintiff furnished and maintained ninety-two arc lights for the streets of the city, which were located as designated by the proper city authorities, and one hundred and ninety-four lights for the public buildings, the equivalent of twenty-four and a half of the arc lights furnished for the streets. The city had the use and benefit of all the lights, and regularly, on demand, paid monthly for one hundred, according to the terms of the contract. For the number in excess of one hundred, the plaintiff made no demand of payment until January 1892. Payment was refused, and after some negotiation and correspondence, the plaintiff requested the city council to designate which of the lights should be removed, so as to reduce the number to one hundred. The council refused to permit any of them removed, insisting that the contract stipulated that the teritory or streets of the city, should be as well lighted as it had been previously by gas—that the one hundred arc lights failed to do this, and the extra lights were put in, to conform to this stipulation of the contract.

It is obvious that a construction of the clause of the contract by which the plaintiff guaranteed that the one hundred lights contracted to be furnished and maintained for the use of the city, would furnish good and sufficient light for a territory equal to that lighted by gas at the making of the contract, is necessary to determine the rights and obligations of the parties, in the events which have since occurred. A contract in writing must be read and construed in its entirety; it is not from parts but from the whole the intention of the parties must be collected; single clauses or sentences are not to be dissociated from others having reference to the same subject-matter, and force and effect given to them alone. The contract must also be construed according to its terms; its words, if of common use, must be taken in their ordinary, usual significance; and if technical words are employed, their technical meaning must be ascertained and accepted. This is the general rule in the construction of the words of a contract, prevailing, unless it clearly appears from the context of the instrument, that the parties did not use them in their ordinary or technical sense. The clause of the contract we are now considering, must be read and construed in connection with the subsequent clause by which at the election of the de-

fendant the public buildings of the city were to be lighted with electricity, and in the event the election was exercised, the electricity was to be taken from the supply necessary to maintain the one hundred lights, and to a defined extent, the plaintiff was relieved from the duty and obligation of furnishing and maintaining that number. The two clauses are connected in subject matter, and cannot be dissociated without doing violence to the integrity of the contract.

The warranty has relation to the external lighting of the city, and is without relation to the lighting of buildings public or private. It relates to *territory*, an equal extent or compass of the streets and other external or exterior parts of the city, to that which was and has been lighted by the gas company. The clause is its own expositor—it is the lighting capacity of one hundred lights—it is not of the capacity of a less number, nor of the one hundred, if not located and used for the external lighting of the city. The principal object the parties had in view was, doubtless, the lighting of the streets of the city, and as the defendant was changing the mode of lighting them, employing another and different agency from that which had been employed, a guarantee or warranty of the capacity of the new or substituted agency, was matter of contract, the relations of the parties would suggest. It became the matter of contract, and the agreement of the parties is expressed in the clause of warranty, and in the subsequent clause by which if the public buildings were lighted by electricity, there was a reduction of the lights for the streets, or the external lighting of the city. There was the lighting of the public buildings, and the consequent reduction below one hundred of the number of lights for other purposes, leaving no room for the operation of the warranty. This is the contract taken in its entirety, into which the parties entered, and however disappointing in its results, it must be effectuated.

From this conclusion it results, that there was error in the admission of the evidence having a tendency to show that the city was not as well lighted by electricity as it was by gas. In no event could that have been a pertinent inquiry; if there had been occasion for the operation of the clause of warranty, the inquiry would not have been whether the city was as well lighted by electricity as it had been by gas, but whether the one

hundred lights furnished by the plaintiff gave good and sufficient light for an equal territory to that which had been lighted by gas, which would have necessitated other inquiries to which we need not now refer.

It may as well be said here as elsewhere, that there was no error in the rejection of evidence of the reason assigned by Snodgrass, the clerk of the city council, for refusing payment of the bills presented for the extra lights. The acts or declarations of the officers or agents of a corporation, as matter of evidence against the corporation, stand upon the same footing as the acts or declarations of an agent of a natural person. To bind the principal, they must be within the scope of the authority conferred upon the agent, and must be done or made while in the exercise of the authority. What was the scope of the authority conferred on the clerk of the city council was not shown; and it cannot be presumed that he had authority to reject, and assign reasons for the rejection of claims preferred against the city, as it could not be presumed that he had authority to create such claims. For the like reason, there was error in the admission of the declarations of Dunham, the president of the board of directors of the plaintiff, as to the furnishing extra lights, and the purpose to continue furnishing them, until the city was as well lighted as it had been by gas. In the absence of all evidence touching the scope of his authority as president, it cannot be presumed that he had any other or greater power than any other director. The duty of the plaintiff under the contract, and what course should be pursued in its performance was matter for the consideration and under the control of the board of directors when assembled, and by the acts or declarations of the president, or of any other member of the board, acting singly, the plaintiff could not be affected.— *Spyker v. Spencer*, 8 Ala. 333; *Sampson v. Fox*, 109 Ala. 662.

There was no error in the rejection of the evidence of Pollak, that he was a member of the board of directors of the plaintiff, and did not, for one or two years, know the plaintiff was furnishing lights in excess of one hundred. The purpose of the evidence was to remove whatever of unfavorable inference could be drawn against the plaintiff, from the delay in claiming compensation for the extra lights. But the delay is not to be explained

by reason of the neglect or *laches* of its own officers or agents.

The contract obliged the plaintiff to furnish and maintain, and the defendant to pay for, one hundred lights only, without regard to the purposes for which they were used—whether for lighting the streets, or for that purpose and for the lighting of the public buildings. The undisputed fact is, that a larger number was furnished and maintained, of which the city had the use and benefit, and the more important question is, whether a contract on the part of the defendant to pay for them, may be implied.

The statutes governing the city at the time the contract was made and during the course of the subsequent transactions, conferred on the city council power "to establish or purchase and maintain gas and electric works, or contract for the furnishing of gas and electricity for fully supplying the city and its inhabitants, and to regulate the manner and rates of furnishing gas and electric lights to private consumers."—Pamph. Acts, 1886-87, p. 488 ; Pamp. Acts, 1888-89, p. 518. Corporations not by the statutes creating or governing them, restrained or limited to a particular mode of contracting, may be bound by implied contracts. Keeping within the line of the capacity to contract conferred by the law of their creation, implications will be indulged against them whenever under like circumstances they would be indulged against natural persons fully *sui juris*.—2 Kent, 291 ; 4 Thompson Law of Corporations, § 5181. In 1 Dillon Mun. Cor., § 459, it is said : "The present state of the authorities clearly justifies the opinion of Chancellor Kent, that corporations may be bound by *implied contracts* within the scope of their powers, to be induced by inference from authorized corporate acts, without either a vote, or deed, or writing. The doctrine is applicable equally to public and private corporations, but in applying it, however, care must be taken not to violate other principles of law. Thus it is obvious that an implied promise cannot be raised against a corporation, when by its charter it can only contract in a prescribed way, except it be a promise for money received or property appropriated under the contract." In *Gas Co. v. San Francisco*, 9 Cal. 453-68, it was said by FIELD, J. : "Under some circumstances, a municipal

corporation may become liable by implication. The obligation to do justice rests equally upon it as upon an individual. It cannot avail itself of the property or labor of a party, and screen itself from responsibility under the plea that it never passed an ordinance upon the subject. As against individuals, the law implies a promise to pay in such cases, and the implication extends equally against corporations."

Implied contracts, it is said by Ch. Kent, "are those which the law raises or presumes, by reason of some value or service rendered, and because common justice requires it."—2 Kent, 450. As a general principle, it may be stated, that one who knowingly takes the benefit of the service of another, or the use of his property, not under an express contract or engagement, impliedly promises to make reasonable compensation. But services may be rendered, or there may be the permissive use and enjoyment of property, under such circumstances as lead to the conclusion, that neither party intended that compensation should be claimed or made. Gratuitously, of mere grace or courtesy, a party may render services, or permit the use of his property, and in that event, the old maxim of the common law applies, that "a mere voluntary courtesy will not have consideration to uphold an assumpsit." There may also, be the rendition of services, without the knowledge or consent of the party to whose benefit they inure, and who had not the opportunity to accept or reject them. In such case, a promise of compensation will not be implied; parties without their consent may not be forced into contractual relations; one man cannot make another his debtor without his consent, "unless it be, when he had the opportunity of consenting or refusing consent."—1 Beach Modern Law of Contracts, § 649, *et seq.*; Clark on Contracts, 777, *et seq.*

There are indications in the evidence, that originally, the extra lights were furnished and maintained by the plaintiff, and accepted and used by the defendant, neither party intending that any other compensation should be made, than that which the existing contract required to be made for the one hundred lights. And this was the result of mutual mistake as to the true interpretation and meaning of the warranty clause of the existing contract. The mistake did not compel the

parties into contractual relations they did not intend to assume—the plaintiff was not under the duty of continuing the further maintenance of the lights, nor the defendant under the duty of their further acceptance and use, making compensation for them. Whether there was the mistake, superinducing the conduct of the parties, is a fact for the determination of the jury. The delay in claiming compensation is not conclusive against the right of the plaintiff. Mere neglect to demand payment for services during the course of their rendition, will not of itself take away the right of the party rendering them to compensation. In determining whether the services were rendered and accepted without the intent that compensation would be claimed or made, it is a fact of more or less significance, dependent for its value upon the relations of the parties, their course of dealing, and other facts illustrative of their mutual, concurring purposes.

Whatever may be true of the time anterior to the demand and refusal of payment for the use of the extra lights, thereafter, the relation of the parties was essentially changed. The defendant had notice that compensation for the use of them was demanded as matter of right, and had opportunity to refuse or continue their further use. Refusing to designate the lights which should be removed or discontinued, reducing the number to one hundred, or its equivalent, and notifying the plaintiff not to remove or.discontinue any of them, common justice requires that a promise to pay for the benefits it was claiming and receiving, should be implied. And as was said in *Marsh v. Fulton County*, 10 Wall. 678, and repeated in *Louisiana v. Wood*, 102 U. S. 294, "the obligation to do justice rests upon all persons, natural or artificial, and if a county obtains the money or property of others without authority, the law, independent of statute, will compel restitution or compensation." With full knowledge that the lights were not furnished and maintained gratuitously, that compensation for them was claimed, without making reasonable compensation, the defendant could not accept and retain the use and benefit of them. The law intervenes, and implies a previous request and the promise of reasonable compensation.—1 Beach Modern Law of Contracts, § 650 ; Clark on Contracts, 783. What is reasonable compensation, or

the mode in which it may be ascertained, varies according to the facts and circumstances of each particular case. In cases of extra work, if it is of the same character as that for which the original contract provides, the general rule is, that the implied compensation must be measured by the rates or prices specified in the contract, and is deemed the better mode of ascertaining it, meting out justice to the parties. Which were to be deemed the extra lights, separate from the one hundred it was the duty of the plaintiff to furnish and maintain, was incapable of ascertainment; all were of the same capacity and quality, and were accepted and used as of the same value. The reasonable and just implication is, that the defendant contemplated, if compensation was made for them, payment would be made according to the terms of the original contract.

The contract stipulates, that each of the lights furnished for the use of the streets, should be "of two thousand candle power and the equivalent thereof." These are technical words, peculiar to the business of electric lighting, and must be understood in the sense in which they are used and employed in that particular business. Though the lights were accepted and used by the defendant, under appropriate pleading, it could have been shown, that taking the words in their technical sense, the lights furnished were not of this power, and were of consequence of diminished value, in reduction of the claim of plaintiff for compensation. But the only plea interposed was the general issue, a mere denial of the allegations of the complaint, limiting the defense to evidence in disproof of them, not authorizing the introduction of evidence in support of an affirmative defense. *Am. Oak Extract Co. v. Ryan*, 112 Ala. 337, and authorities cited.

We have passed on all the questions arising on the assignment of errors, which will probably arise on a future trial. It is apparent from what has been said, there is no aspect of the case in which the general affirmative instruction should have been given.

Let the judgment be reversed, and the cause remanded for further proceedings in conformity to this opinion.

Reversed and remanded.