78 So.2d 631

Virginia S. BRASWELL

v.

Major C. MALONE et al.

6 Div. 694.

Supreme Court of Alabama.

March 10, 1955.

Ling & Bains, Bessemer, for appellant.

Lowe & Williams, Birmingham, and G. P. Benton, Fairfield, for appellees.

PER CURIAM.

This is an appeal by Virginia S. Braswell, a married woman, by filing an affidavit as authorized by section 799, Title 7, Code. The decree from which this appeal is taken is dated September 18, 1953. A bill in equity had been filed on March 17, 1953 by appellant and her husband, John O. Braswell. The respondents are alleged to be Major C. Malone, Garrett L. Jones, the Jefferson Federal Savings and Loan Association, and the Seale Lumber Company.

The bill alleges, in substance, that complainants entered into a contract with said Jones and Malone (date not given) to furnish all material and labor and to build a house for them at an agreed price of $8,700, the house to be completed by October 1, 1952; that the contractors entered upon the performance of the contract; that the contract was not performed by them by October 1st, nor October 20, 1952, on which day they abandoned the work. That on January 3, 1953, complainants and Jones, one of the respondent contractors, entered into another contract for a completion of the job, fixing the contract price at $7,905 as of that date; that on March 11, 1953, the said Jones had failed to complete his contract and was without resources to do so; that he gave complainants a detailed estimate of the cost of completing the contract, aggregating $2,620.50; that his creditors' claims amounted to $4,903.54, and that complainants had paid Jones or his creditors

$3,003.18. The bill further alleges that complainants executed a mortgage to the Jefferson Federal Savings and Loan Association in the sum of $6,750 to be used in paying for the construction of the house; that the association did not make the advance in full; and that respondent Seale Lumber Company had filed a bill in that court seeking to enforce a lien on the property for materials furnished, and to sell said property to enforce it.

The prayer is for (A) a declaration that Malone forfeited all rights under the contract on account of its abandonment; (B) that Jones be required to specifically perform his contract of "February" (January?) 3, 1953; or, in the alternative, that said contract be cancelled; (C) that Jones be required under oath to furnish the name and address of all materialmen and laborers employed on the job and the amounts paid or owing each; (D) that the Jefferson Federal Savings and Loan Association "be required under a writ of specific performance (?) to honor vouchers for labor and materials to the total amount of $6750.00", or, in the alternative, to cancel said note and mortgage; (E) issue an order restraining the further prosecution of the suit by Seale Lumber Company (No. 13970); (F) that complainants be authorized to enter into a new contract with a contractor for the completion of the said house; (G) that complainants' total liability for the construction of the house be fixed at $8,700 less amounts for various specified causes; that the cost of completing the construction of the house be charged against the contract price and any bills for which complainants are directly liable be then fixed and paid and the remaining bills for labor and materials accumulated by Malone or Jones be paid pro rata from the balance remaining in the hands of complainants not charged against the contract price. Paragraph (H) of the prayer is that "this cause be set down for hearing to determine whether a temporary mandatory writ of specific performance (?) shall be issued" to said Jones to complete the construction of the house in accordance with his agreement, and as to whether a temporary mandatory order shall issue to respondent Jefferson Federal Savings and Loan Association to honor vouchers for the payment of labor and materials, and whether a temporary restraining order shall issue to respondent Seale Lumber Company in case No. 13970, supra; and for general relief in the alternative.

An order of the court dated March 17, 1953, set April 3, 1953 to determine "whether temporary mandatory writs of specific performance (?) shall issue to respondents" Jones, the Jefferson Federal Savings and Loan Association and the Seale Lumber Company.

The Seale Lumber Company demurred to the bill on April 3, 1953. Demurrer had also been filed by the Jefferson Federal Savings and Loan Association. On that day a decree was entered by the court reciting that the cause coming on to be heard on the sworn bill, and all parties being present in court or by counsel, "It is by the court and the consent of the parties hereto ordered, adjudged and decreed as follows":

1. That all the interest of Malone and Jones in the contract or any money due thereunder be and is forfeited because of their abandonment of the contract.

2. That all the interest of respondent Jones in the contract above mentioned be and is forfeited because of his abandonment.

3. "The court retains jurisdiction of the termination of said contract for the purpose of determining what if any would be due thereunder for the purpose of fixing the amount of funds unpaid in the hands of the owner to the contractor in order that the obligation of the owner to materialmen and laborers who have furnished material and labor into the construction of the house as described in the bill of complaint may be further fixed and determined by the court".

4. That complainants shall pay no further sums to Malone and Jones, "but that all amounts due under said contract as finally determined by the court shall be paid to materialmen and laborers" for material and labor supplied in the construction of the

326

house; and any claim by complainants against said Malone and Jones on account of said contract is thereby terminated and cancelled.

5. "That on the representation of Jefferson Federal Savings and Loan Association that they would complete the loan on this property when it has been fully determined that all adverse claims have been settled, the case is continued as to it for further proceedings when the claims to the property have been settled in this case."

6. That the case is passed as to the Seale Lumber Company until reset by the court.

7. That the testimony of Malone and Jones is that the attached statements show the names and amounts of all unpaid bills for labor and materials that went into the construction of the house.

8. The complainants are directed to obtain three bids from three different persons for the cost of completing the construction of said house in accordance with the plans and specifications. This is to aid the court in determining the unpaid balance that would be due by complainants to Malone and Jones which should be applied to unpaid bills for labor and materials which had been incurred by them in the construction of the house.

9. "The court retains jurisdiction of the cause for further proceedings on the representation that complainants will move for a consolidation of cases or add as parties respondent all parties who have furnished materials to the general contractor for the construction of said house in order that complete equity may be done in this case as to all parties having an interest in the subject matter thereof".

An alleged supplemental bill was later filed (date not given) referring to the decree of April 3, 1953, above, and reciting that it is pursuant to that decree. It sets forth the names and amounts of all persons holding unpaid bills for labor and materials used in the construction of the house; that they received three bids as suggested in that decree, giving the names and amount of each. It gives the details of certain suits which have been filed for labor and materials; and alleges that Jones filed a voluntary petition in bankruptcy. It further specifies in detail the amounts which had been paid by complainants for labor and materials. Those parties claiming liens filed their claims.

On September 18, 1953 the court rendered a final decree retaining jurisdiction for administrative purposes.

There was much testimony taken orally in open court. All the parties noted testimony (which is not necessary when it is thus taken—Equity Rule 57). The decree of April 3, 1953 was apparently in response to the order made on March 17, 1953 setting the bill down for hearing under section 1054, Title 7, Code.

■ We know of no authority for a preliminary mandatory writ of *specific performance,* as prayed for in paragraph H of the prayer of the bill. A preliminary mandatory injunction is a remedy which usually has the effect of granting the relief available on final decree and should be refused except in very rare cases and granted only when the right to it is clear and certain. Green v. Messer, 243 Ala. 405, 10 So.2d 157; City of Decatur v. Meadors, 235 Ala. 544, 180 So. 550. That is probably what complainants meant by "a temporary mandatory writ of specific performance" in paragraph H of the prayer.

The final decree contains the following finding of facts: (1) The balance due Jefferson Federal Savings and Loan Association of $329.67, and that it constitutes a first lien on the *real estate.* No question is raised as to that. (2) The court found that complainants contracted personally to pay certain materialmen and laborers, and that they have a first lien on the real estate and *improvements* (subject to the mortgage of Jefferson Federal Savings and Loan Association on *real estate*). Their respective names and amounts are stated, the amounts aggregating $1,534.54. No question is here raised as to that finding. (3) The court then found and named

the persons who furnished materials to the contractor in the amount stated, aggregating $3,743.13, but for which complainants did not contract. It then found that they are entitled to share proportionately in the balance due by the complainants under the construction contract, which was found to be $3,406.24. That finding constitutes the second assignment of error. (4) The court then found the separate amounts to be paid each such materialman named in item 3, above, out of said sum of $3,406.24: all of those amounts aggregating said sum of $3,406.24. That constitutes the third assignment of error. (5) "The court finds that complainants were guilty of a wrongful breach of the construction contract with their contractor, resulting in the abandonment by the contractor of further performance by him under the contract." That finding constitutes the first assignment of error. The court decreed according to those findings. That constitutes the fourth assignment of error.

The substance of appellant's contention on appeal is the finding and decree that there is a balance of the contract price for building the house still unpaid of $3,406.-24, out of which the materialmen named in finding (3) and (4), supra, are due to be paid by complainants. Complainants claim they have paid amounts which with proper deductions and amounts obligated by them equal or exceed the contract price, and that nothing further is due to be paid by them. They also claim that they did not breach the construction contract as found by the court and, therefore, their legal status toward their contractor is that which results from an abandonment of the contract by the contractor without just cause.

■ As to the first assignment of error, we note there is a seeming conflict between the interlocutory decree and the final decree. It is decreed in the former that the contractor had abandoned his contract and, therefore, had forfeited all his interest in the contract. In the final decree it is noted that the former was not based upon a hearing, and was without notice to the materialmen later made parties, but was based upon a statement in open court by the contractor that he was going into bankruptcy and was not asking that any balance due under the contract be paid to him. Other parts of the interlocutory decree show that it did not intend to affect the rights of the lien claimants. The interlocutory decree was subject to alteration in the final decree, and when they conflict the final decree controls. So that, the status of the finding is that the contractor had just cause to abandon the contract on account of a breach of it by complainants. That feature of the final decree, as we have said, is the subject of the first assignment of error.

■ We find the evidence in conflict as to whether complainants breached their contract to meet the payroll of the contractor which was necessary to the continued performance of the contract by the contractor. On the state of the evidence taken in open court, we would not be willing to reverse the finding of the lower court in that respect.

■ Second, Third and Fourth Assignments of Error.

"If a contractor has failed to perform his part of the contract, or has performed it in a different manner from that provided by the contract, or abandons the work, the owner can refuse to accept it, and require performance, before being liable on the contract price or a quantum meruit; but he may by word or act, or by a failure to speak or act, accept the partial performance, or performance in a different manner, and thereby waive strict or full performance, and render himself liable on a quantum meruit, less such damages as he may sustain from the contractor's breach, but not for the contract price, unless so agreed, after breach on the part of the contractor. That which will make an owner liable on a quantum meruit, on a partial or incomplete performance on the part of the contractor, does not necessarily amount to a waiver of his right to recoup damages for the contractor's

breach; and upon the whole he should certainly have such amount deducted from the contract price as will be equal to the difference between the value of the work agreed to be done, and that of the work done". R. D. Burnett Cigar Co. v. Art Wall Paper Co., 164 Ala. 547, 560, 51 So. 263, 268. See, also, Gray v. Wood, 220 Ala. 587, 127 So. 148; Alabama Trunk & Luggage Co. v. Hauer, 214 Ala. 473, 108 So. 339; Walstrom v. Oliver-Watts Const. Co., 161 Ala. 608, 50 So. 46; Bates v. Birmingham Paint & Glass Co., 143 Ala. 198, 38 So. 845; Aarnes v. Windham, 137 Ala. 513, 34 So. 816; Davis v. Badders, 95 Ala. 348, 10 So. 422; United States v. Spearin, 248 U. S. 132, 39 S.Ct. 59, 63 L.Ed. 166.

That principle is controlling when a contractor abandons his contract or fails to perform it without just cause. But it is said in Carbon Hill Coal Co. v. Cunningham, 153 Ala. 573, 44 So. 1016: "When it is shown that defendant (owner) breached the contract, and thereby prevented its full performance, the plaintiff (contractor) may maintain the common counts for work and labor done".

In 17 C.J.S., Contracts, pages 833–834, 367, it is said:

"Where the builder is excused from fully performing the contract by some wrongful act or omission on the part of the owner * * *, he is entitled to the compensation provided for in the contract so far as he has performed the work or supplied materials, less payments already received * * *." And that when "full performance by the builder is excused by reason of the wrongful acts of the owner, the builder may sue on the contract to recover for the work done according to the contract and for the loss, in profits or otherwise, sustained; or he may treat the contract as rescinded and sue on a quantum meruit to recover the full value of the labor done and the materials furnished in the partial performance of the contract, even though this may exceed the contract price."

So that, if the complainants breached an essential and dependent feature of the contract, the contractor may abandon it and either (1) sue on the contract and recover an amount equal to a proportion of the contract price which he has earned, or (2) sue for work and labor done on a quantum meruit without regard to the price named in the contract. In either event there should be deducted an amount equal to the sum of what was paid by the owner for the contractor, and the amount assumed by him for the benefit of the contractor. In that event, the contractor would have his choice, dependent upon which would be most advantageous to him. He is not here interested; but his materialmen with a lien are interested and, therefore, that amount most favorable to them should be controlling here.

Another applicable principle is that after a materialman or laborer has earned a lien on the balance due a contractor under section 37, Title 33, Code, the owner with notice and the contractor cannot by agreement abridge their relations so as to affect that lien. Cranford Mercantile Co. v. Wells, 195 Ala. 251(3), 70 So. 666; Crane Co. v. Sheraton Apartments, Inc., 257 Ala. 332, 58 So.2d 614.

Complainants claim they paid the contractor or his creditors $3,022.37, and became obligated to certain persons who supplied material to the contractor for the job in the amount of $1,534.53. The sum of those figures should be deducted from seventy-five percent of the contract price to ascertain the balance due the contractor on which the materialmen, whose claims were not assumed by the complainants, have a lien. Section 37, Title 33, Code.

The final decree does not show how the court arrived at a balance of $3,406.24 due the contractor by complainants, on which the lien of the materialmen was declared and enforced. Counsel for appellees, representing the materialmen, do not supply the information in that respect.

From the evidence we cannot reach that conclusion without more aid. The decree must have evidence to support it. Counsel for appellees must point it out in their brief. Supreme Court Rule 11.

Since we think the decree should be reversed as to the features contained in the second, third and fourth assignments of error, we believe it advisable to reverse the final decree as a whole and remand the cause.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, STAKELY and MERRILL, JJ., concur.