359 So.2d 792 (1978)
HENDRIX, MOHR & YARDLEY, INC., a Corporation
v.
The CITY OF DAPHNE et al. and the First National Bank of Fairhope, a National Banking Association, et al.
77-5.
Supreme Court of Alabama.
June 9, 1978.
*794 Champ Lyons, Jr. and Frederick G. Helmsing, Mobile, for appellant.
William H. Hardie, Jr., Mobile, for appellee, The First National Bank of Fairhope.
JONES, Justice.
This appeal concerns a contract action filed by Appellant, Hendrix, Mohr & Yardley, Inc., an investment banker, as fiscal agent for the Town of Daphne, seeking to recover for breach of contract and for services rendered under an implied contract. Alternatively, Hendrix-Mohr sought a declaratory judgment, declaring its right to a fee of 2% of the total bonds issued in the future for the financing of sewer construction in Daphne. We affirm in part, and reverse and remand in part.
This case was consolidated for trial with an action against the First National Bank of Fairhope for alleged violations of federal law and tortious interference with contractual relationships. No review is sought of the judgment in favor of the Bank.
On October 20, 1952, Hendrix-Mohr executed a contract with the Town of Daphne to perform certain duties as fiscal agent concerning a water works bond issue and to assist the Town in acquiring a gas distribution system. This contract contained a guaranteed bid clause and provided for compensation to Hendrix-Mohr equal to 3% of the bonds issued. The bonds were issued, pursuant to the contract, and it is undisputed that Hendrix-Mohr received its full payment. Thereafter, Hendrix-Mohr, without benefit of either a written or oral contract, performed services for the Town as its fiscal agent and aided in the formation of a water works board.
In 1961, a second written contract was entered into by these parties. This contract was for services related to the construction of sewers and the issuance of sewer bonds to finance such construction. No guaranteed bid clause was included and Hendrix-Mohr was to be paid 2% of the principal amount of the bonds issued. The contract further stated: "In the event no bonds or warrants are issued, the City owes the Agent nothing." The contract contained no termination date.
Pursuant to this second contract, and in order to enhance the Town's financial position and thus render the bonds salable, the fiscal agent worked toward acquisition of the Town's gas distribution system, (at that time owned by the City of Fairhope). Hendrix-Mohr recommended that the Town exercise its previously acquired option to purchase the gas system from the City of Fairhope, which was accomplished after extensive and lengthy legal action. See Town of Daphne v. City of Fairhope, 284 Ala. 556, 226 So.2d 383 (1969); and City of Fairhope v. Town of Daphne, 282 Ala. 51, 208 So.2d 917 (1968). Due to "soft" bond markets and the continuing financial inabilities of the Town, however, the sewer bonds have never been issued.
While acting as fiscal agent, Hendrix-Mohr helped in seven other bond issues from 1952 through 1975. These were generally smaller issues and Appellant either was paid 2% of the principal amount or acted as underwriting agent and received its compensation from the subsequent resale of the bonds. Furthermore, Appellant served as financial advisor for the Town on an expansion of the water system to service the Montrose, Alabama, area. During this time, several grants were sought and obtained (though they subsequently lapsed) by the Town from State and Federal environmental *795 and urban development agencies. For each, Hendrix-Mohr served the Town as fiscal agent. Appellant also helped and advised the Town in the formation of its Utilities Board.
Prior to 1975, the Town asked Hendrix-Mohr to evaluate the feasibility of issuing $600,000 worth of water bonds. The record is unclear as to exactly what services were performed in this regard. On July 2, 1975, the Town notified Appellant that the First National Bank of Fairhope was "handling" this bond issue. Believing correctly that this merely meant the Bank was purchasing the bonds, Hendrix-Mohr continued to act as fiscal agent. The Town on its own, however, contacted bond attorneys and performed many of these same duties. The bond issue was closed on September 25, 1975.
On October 20, Appellant was told that the Town would pass a resolution telling it to perform no more work for Daphne. This was confirmed by letter dated November 14, 1975.
Appellant, pursuant to the Town's request, sent a bill seeking $18,000 for services rendered$12,000 for work on the 1975 bond issue (based on 2% of the $600,000 principal amount), and $6,000 for other services performed as fiscal agent (including work on the 1961 contract, formation of both the Water Works Board and the Utilities Board, grant applications and the Montrose water system extension). Upon receipt of this bill, the Town tendered, but Hendrix-Mohr refused to accept, a $6,000 check which "would not prejudice plaintiff's right in any way to assert any claim." At trial, however, witnesses for the Town stated they did not believe Hendrix-Mohr was entitled to receive even this amount.
Trial began on June 21, 1977, and the Court, sitting without a jury, entered judgment for all Defendants on July 15. This appeal followed.
Hendrix-Mohr asserts that the 1961 contract was on-going and that the Town wrongfully repudiated the contract. The work and labor done was allegedly over and above that required by this and other written contracts. Thus, it contends, the reasonable value of the services is recoverable under either a theory of implied contract or in quantum meruit.

I.
It is well settled that, provided a contract is within the scope of its corporate powers, a municipal corporation may be held liable on an implied contract, either where the contract is implied in fact from corporate acts, or is implied in law, to prevent the municipality from enriching itself by accepting and retaining benefits without paying just compensation therefor. Bethune v. City of Mountain Brook, 293 Ala. 89, 300 So.2d 350 (1974); and Brush Electric Light & Power Co. v. City Council of Montgomery, 114 Ala. 433, 21 So. 960 (1896).
Daphne clearly was authorized to enter these contractual relations because it is the duty of the Town to provide utility services for its inhabitants. See Constitution of Alabama, § 225; § 11-48-61, Code 1975; and Hillard v. City of Mobile, 253 Ala. 676, 47 So.2d 162 (1950). Inherent in this duty is the power to issue public improvement bonds and the power to obtain financial advice in this regard. Thus, as a necessary incident to the expressed power, the Town was authorized to contract with a fiscal agent concerning its financial affairs. See Phenix City v. Putnam, 268 Ala. 661, 109 So.2d 836 (1959); and Fitts v. Commission of City of Birmingham, 224 Ala. 600, 141 So. 354 (1932). Therefore, if all other conditions exist, Daphne could be obligated to pay for services rendered to it under an implied contract.

II.
It is the settled law of this State that where one knowingly accepts services rendered by another, and the benefit and result thereof, the law implies a promise on the part of the one accepting with knowledge the services rendered by another to pay the reasonable value of such services rendered. Huffman-East Development Corp. v. Summers Electric Supply Co., 288 *796 Ala. 579, 263 So.2d 677 (1972); and Shirley v. McNeal, 272 Ala. 696, 133 So.2d 873 (1961). Furthermore, we have stated that:
"An implied contract arises where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract. Such a contract must contain all the elements of an express contract, which rests on consent, and it is to every intent and purpose an agreement between the parties, and it cannot be found to exist unless a contract status is shown." Water Works and Sanitary Sewer Board of City of Montgomery v. Norman, 282 Ala. 41, 45, 208 So.2d 788, 791 (1968).
To recover under an implied contract, however, where there is an express contract, it must be shown either that the express contract is performed as to all but payment for the services, or that the other party has breached the express contract and thus prevented its performance. Lovoy v. Ratliff, 276 Ala. 156, 159 So.2d 857 (1963); Braswell v. Malone, 262 Ala. 323, 78 So.2d 631 (1955); Foster & Creighton Co. v. Box, 259 Ala. 474, 66 So.2d 746 (1953); Ludden & Bates v. Watt, 18 Ala.App. 652, 94 So. 239 (1922); and Dunaway v. Roden, 14 Ala.App. 501, 71 So. 70 (1916). Furthermore, a party may recover for work and labor done in excess of the written requirements of the contract where that aspect is not of the type which must be in writing and where there is mutual assent. Bonie v. Griffin, 252 Ala. 299, 40 So.2d 870 (1949).
Under the facts before us, however, an implied contract for work and labor done is not proper. There has been no breach of the 1961 contract by the Town and Hendrix-Mohr has not fully performed its obligations under the contract. Mr. Hendrix admitted Hendrix-Mohr's work was only 90% complete and, thus, the contract is not "fully performed except for the payment." Furthermore, merely because the Town renounces the contract and treats it as expired does not mean they breached that contract.
As stated, no termination or expiration date was stated in the contract itself. The rule as established by this Court is that, when an act is to be done, and no time is prescribed for its performance, the law requires it to be done within a reasonable time. Smith v. Pope, 280 Ala. 662, 197 So.2d 767 (1967); Sims v. City of Birmingham, 256 Ala. 540, 55 So.2d 833 (1951); and Drake v. Goree, 22 Ala. 409 (1853). What is a reasonable time depends upon the nature of the act to be done and all the circumstances relating to that act. Smith, supra. This, necessarily, is a question of fact to be determined by the trier of factshere, the trial Judge. Drake, supra.
This factual question was decided adversely to Appellant; and all presumptions lie in favor of his decree under our ore tenus rule of review. See Richards v. William Beach Hardware Co., 242 Ala. 535, 7 So.2d 492 (1942). Thus, where, as here, there is credible evidence supporting the Court's decree, and it is not manifestly unjust or unreasonable, the decree must be upheld. Alabama Power Co. v. Martin, 341 So.2d 695 (Ala.1977); Hartford Accident and Indemnity Co. v. Oglesby, 293 Ala. 620, 308 So.2d 695 (1975); and Shirley, supra.
Here, there is substantial evidence in this regard. The contract in controversy is fourteen years old and even Appellant originally believed it would take only one to two years to complete. Therefore, because there was no evidence that this delay was occasioned by the Town, the record fully supports the holding that a reasonable time has transpired and that the contract, was properly held to have expired. Thus viewed, the trial Court was correct in holding that the contract was not breached.
The type services Hendrix-Mohr performed are of the type normally offered of courtesy to aid a customer or client in hopes of fostering future or continued contractual patronage. Although Hendrix testified that Appellant did not act as fiscal agent merely to obtain the Town's financial business, he stated several times that Appellant was working toward its fee from the 1961 contract to recoup pay for these additional *797 services. It thus becomes evident that these peripheral activities were in furtherance of the 1961 obligations and were offered gratuitously. This Court has held:
"As a general principle, it may be stated that one who knowingly takes the benefit of the service of another, or the use of his property, not under an express contract or engagement, impliedly promises to make reasonable compensation. But services may be rendered, or there may be permissive use and enjoyment of property, under such circumstances as lead to the conclusion that neither party intended that compensation should be claimed or made. Gratuitously, of mere grace or courtesy, a party may render services, or permit the use of his property; and in that event the old maxim of the common law applies, that `a mere voluntary courtesy will not have consideration to uphold an assumpsit.'" Brush, supra, at 446, 21 So. at 964.
Moreover, and in further support of our holding, even should we deem an implied contractual relationship to have arisen concerning the 1961 contract, Hendrix-Mohr could not recover. As an implied contract based upon an originally express agreement, its terms are referable to the original agreement. See, generally, Howell v. Dodd, 229 Ala. 393, 157 So. 211 (1934). The original 1961 contract states:
"In the event no bonds or warrants are issued, the City owes the Agent nothing."
Thus, regardless of the services performed over and above the contract, because no bonds have been issued (and that contract is now expired), no remuneration is proper either by terms of the contract or under any legal theory pursued by Appellant. Additionally, there is evidence to the effect that, because of the long delay, all work performed on this bond issue would, necessarily, have to be redone. Consequently, the Town has received no benefit from these services and, thus, no implied contract will lie.

III.
Concerning the 1975 bond issue, however, the trial Court committed reversible error. As stated, Hendrix-Mohr was asked to render financial guidance as to this issue. Furthermore, it is undisputed that it worked on this project for a number of years and rendered valuable services. Even witnesses for the Town testified that a reasonable sum was due, and merely disagreed as to the value of these services. Though the Town performed many of these services itself, Appellant served as fiscal agent and is entitled to remuneration for work it undertook and performed.
Because the essential facts relative to this issue are undisputed, the judgment of the trial Court in this regard is not binding upon us. City Stores Co. v. Williams, 287 Ala. 385, 252 So.2d 45 (1971). Therefore, we remand this action for further proceedings to determine the reasonable value of Hendrix-Mohr's services relative to the 1975 bond issue. In so holding, we are not to be understood as indicating either that the amount recoverable is necessarily limited to 2% of the principal amount of the bond or that even the 2% fee is necessarily recoverable. The prior course of dealings between these parties is instructive as to the terms of this implied agreement. See Flagg-Utica Corp. v. City of Florence, 275 Ala. 475, 156 So.2d 338 (1963). In these prior dealings, however, Hendrix-Mohr performed all the acts pertaining to fiscal agency. This was not done for the 1975 bond issue. Accordingly, the reasonable value of the services actually performed, whatever that may be, is recoverable upon a subsequent hearing.
The judgment of the trial Court is affirmed as it pertains to the 1961 contract and related matters; it is reversed and the cause is remanded as to the services performed on the 1975 bond issue.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
TORBERT, C. J., and BLOODWORTH, FAULKNER, ALMON and EMBRY, JJ., concur.
MADDOX and BEATTY, JJ., concur in parts I and II but dissent as to part III.
SHORES, J., not sitting.
*798 MADDOX, Justice (concurring in part; dissenting in part).
I concur in Parts I and II, but dissent as to Part III. I would affirm the judgment below in its entirety.
BEATTY, J., concurs.