SAM A. BEATTY, Retired Justice.
The trial court entered a judgment on a jury verdict finding that A.E. Sanders, individually and doing business as Sanders Construction Company (“Sanders”), and United States Fidelity and Guaranty Insurance Company (“USF & G”) were liable to J.W. Snyder Construction Company, Inc. (“Snyder”) for breach of contract. Sanders and USF & G appealed from the denial of their post-judgment motion. We affirm conditionally.
Sanders was the general contractor on a construction job in Gadsden. In December 1990, Sanders subcontracted with Snyder for the earthwork on the job site, consisting of excavation and backfill. The cost of the earthwork was estimated at $38,800. Charles Kelly, Snyder’s project manager, testified that he told Sanders that he could complete the job in two weeks under ideal conditions, which he defined as “no rain.” Sanders testified that it was critical that the earthwork be completed as soon as possible so that he could proceed with the remainder of the job. Kelly and his men began work on December 6 and worked continuously until December 14. By that time, most of the excavation and approximately 25% of the backfill had been completed. On December 15, rain began, and it presented a problem for Snyder. According to the testimony, if the moisture content of backfill is too high, the backfill will not meet the compaction standards for a job site. From December 15 through January 18, Kelly testified, rain delayed him from completing the earthwork. Sanders testified that he made suggestions to Kelly about ways he could minimize the moisture problems with the backfill, but that Kelly insisted upon doing the work his own way. Sanders also introduced into evidence weather records from December 6 through January 18, which showed several days without rain, when Sanders insisted Kelly and his men could have been working.
The parties’ contract called for Sanders to pay Snyder 90% of the amount due for all work completed each month. The payment was due on the 15th of the following month, except for a final payment due 90 days after completion of the earthwork. Snyder’s pay requests were due on the 25th of the month in which the work was done. The contract between Sanders and Snyder does not specify whether Snyder’s pay requests were to be written or oral, but Sanders took the position that because his general contract called for written pay requests, Snyder’s subcontract with him also required written pay requests. *578 Kelly testified that he discussed a pay request with Sanders on several occasions in mid-December. On January 18, after receiving an advance of $10,000 for earthwork costs through the end of December, Sanders paid Snyder $4,005. Sanders testified that he kept the remaining $5,995 because he was unhappy with Kelly’s lack of progress on the job and was trying to protect himself in the event Kelly was unable to complete the job. He also testified that he told Kelly that if he would finish the job, he would pay him the remaining $5,995 the following Monday. Kelly testified that Sanders told him he would get the rest of his money in August when the job was completed. After being given only a partial payment, Kelly and his workers took their equipment off the job. Sanders then hired another company to complete the earthwork.
After Sanders refused to pay Snyder the amount due for the work completed to that point, Kelly employed an engineering firm to perform a topographical evaluation of the job site to measure the amount of work his company had completed. Doug Waldrup, a registered engineer and surveyor with that firm, had prepared the initial topographical survey of the job site before the work began. He compared the second survey with the first to calculate the percentage of work completed by Snyder. Waldrup calculated that Snyder had excavated 4,770 cubic yards, which was approximately 95% of the excavation, and had completed 1,388 cubic yards of backfill, which was approximately 25% of the backfill. Waldrup calculated that as of January 18, Snyder was owed a total of $20,460. From that figure, he subtracted the 10% standard retainage figure for construction work, for a total then due Snyder of $18,414. Snyder made a demand to Sanders on January 25 for $14,409 ($18,414 less the $4,005 paid on January 18).
Sanders refused to make any further payments to Snyder, contending that Snyder had abandoned the project and thus had forced him to hire another contractor to finish the earthwork. Sanders paid the second subcontractor $23,500. Sanders was paid a total of $40,371 for the earthwork by the owners of the project.
USF & G had issued a payment bond to Sanders to secure payments to claimants on the construction project. Snyder is a claimant under that bond, but has not received payment from USF & G or Sanders.
Snyder sued Sanders and USF & G, alleging breach of contract. Sanders counterclaimed against Snyder, also alleging breach of contract. A jury returned a verdict in favor of Snyder, awarding it $21,000 in damages. Sanders and USF & G moved for a judgment notwithstanding the verdict or for a new trial. Their motion was denied by operation of law, pursuant to Rule 59.1, Ala. R. Civ. P.
Sanders and USF & G contend that the trial court erred in refusing to grant their post-judgment motion and that the jury’s verdict was contrary to the evidence and excessive as a matter of law.
When reviewing a motion for a JNOV, this court uses the same standard used by the trial court in granting or denying an initial motion for directed verdict. Griggs v. Finley, 565 So.2d 154, 159 (Ala.1990). “ ‘Granting a motion for JNOV is proper “only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ” and the moving party is entitled to [a] judgment as a matter of law.’ ” Id. (quoting Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160, 162 (Ala.1988)) (citations omitted).
Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350, 1353 (Ala.1992). For actions filed after June 11, 1987, the nonmovant must present “substantial evidence” in order to withstand a motion for a directed verdict or a motion for a JNOV. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at *579 1353. In reviewing a motion for a directed verdict or for a JNOV, this court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id. Regarding rulings on questions of law, however, no presumption of correctness applies to our review. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126, 1129 (Ala.1992).
A review of this record clearly reflects that Snyder produced substantial evidence creating a factual dispute requiring resolution by the jury; therefore, the JNOV was properly denied. Much of the testimony in this case was conflicting. Sanders and Kelly each insisted that the other breached the contract, and each hotly contested the other’s claims. The jury heard their testimony, as well as the testimony of the other witnesses, and resolved the conflict in Snyder’s favor. A jury verdict is presumed correct, and this presumption is strengthened by the trial court’s denial of a motion for a new trial. Med Plus Properties v. Colcock Constr. Group, Inc., 628 So.2d 370 (Ala.1993). We hold that the jury’s verdict was supported by sufficient evidence and that it was not against the great weight of the evidence.
We now turn to Sanders and USF & G’s contention that the damages awarded by the jury were excessive. “The measure of damages in a breach of contract case is ‘that sum which would place the injured party in the same condition he would have occupied if the contract had not been breached.’ ” Joiner v. Holland & Woodard Co., 652 So.2d 261, 262 (Ala.Civ.App.1994) (quoting Brendle Fire Equipment, Inc. v. Electronic Engineers, Inc., 454 So.2d 1032, 1034 (Ala.Civ.App.1984)). More specifically, in a situation in which the defendant has prevented the plaintiff from performing, our supreme court has stated the following rule:
“ ‘If the ... [general contractor] breached an essential and dependent feature of the contract, the ... [subcontractor] may abandon it and either (1) sue on the contract and recover an amount equal to a proportion of the contract price which he has earned, or (2) sue for work and labor done on a quantum meruit without regard to the price named in the contract.’ ”
Ex parte Woodward Constr. & Design, Inc., 627 So.2d 393, 394 (Ala.1993) (quoting Braswell v. Malone, 262 Ala. 323, 328, 78 So.2d 631, 636 (1955)) (emphasis in Woodward). We address only the first alternative, because Snyder did not sue on a quantum meruit theory.
The record reflects that Snyder hired Waldrup’s engineering firm to calculate the amount due to it as of January 18, the day it ceased working on Sanders’s job site because he refused to comply with Snyder’s pay request. Waldrup calculated the proportion of the contract price Snyder had earned to be $20,460. Of that amount, Sanders had paid Snyder $4,005, leaving a balance due of $16,455. There was no evidentiary basis upon which the jury could award damages in excess of that amount. The award of $21,000, therefore, was excessive as a matter of law. For that reason, we must order a remittitur in the amount of $4,545 in compensatory damages, because $16,455 is the total amount to which Snyder is entitled under the facts.
In view of the foregoing, therefore, we affirm the judgment for Snyder, conditioned upon Snyder’s filing a remittitur of $4,545 within 30 days after the date of this opinion, pursuant to § 12-22-71, Ala.Code 1975, reducing the total judgment as ordered herein; otherwise, this judgment will stand reversed and the cause remanded for a new trial.
The foregoing opinion was prepared by SAM A. BEATTY, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
AFFIRMED CONDITIONALLY.
THIGPEN, YATES, and CRAWLEY, JJ., concur.
ROBERTSON, P.J., and MONROE, J., dissent.